**John ROUMELIOTIS, Plaintiff, Appellant,**

v.

**George POPA, Defendant, Appellee.**

**No. 97–9011.**

United States Court of Appeals, First Circuit.

Submitted March 13, 1998.

Decided April 2, 1998.

Paul A. Gargano and Gargano & Associates, P.C. on brief for appellant.

Mark G. DeGiacomo, Jacqueline F. Walsh, and Roche, Carens & DeGiamcomo, P.C. on brief for appellee.

Before LYNCH, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

The sole issue before us is the scope of the application of 11 U.S.C. § 523(a)(6), which provides that a debtor is not discharged from any debt, "for willful and malicious injury by the debtor to another entity or to the property of another entity." The facts are clear and undisputed.

## I

Plaintiff-appellant John Roumeliotis was employed as an automobile service station attendant by defendant-appellee George Popa. While working alone at night on November 2, 1994, plaintiff was severely beaten. He suffered multiple fractures to his skull, the loss of his left eye, and severe burns on his back. There was evidence from which it could be found that Popa knew that his service station was located in a high-crime area. Within a period of less than a year prior to the assault on plaintiff, the service station had been robbed twice.

Plaintiff filed for workers' compensation with the Massachusetts Industrial Accident Board. He was informed that Popa had not obtained workmen's compensation insurance from a private carrier and that he did not qualify as a self-insurer. Popa, therefore, had violated Mass. Gen. Laws Ann. ch. 152, § 25A (West 1988).

On February 1, 1985, plaintiff brought suit against Popa in Massachusetts, alleging that Popa was strictly liable for failing to obtain Massachusetts workers' compensation insurance and that Popa failed to provide adequate safety for plaintiff at the service station. On May 3, 1996, Popa filed for chapter 7 bankruptcy protection. Plaintiff was scheduled by the debtor, Popa, as holding a contingent and unliquidated claim for an unknown amount. On July 10, 1996, plaintiff filed an adversary complaint in the Bankruptcy Court, seeking to have his state court claims determined to be non-dischargeable. The complaint was dismissed on October 31, 1996. An appeal was taken to the Bankruptcy Appellate Panel, which affirmed the dis-

missal by the Bankruptcy Court. This appeal followed.

## II

The Supreme Court, in a unanimous opinion by Justice Ginsburg, has spoken directly on the question of the scope of the application of 11 U.S.C. § 523(a)(6) in a very recent case, *Kawaauhau v. Geiger,* —— U.S. ——, 118 S.Ct. 974, —— L.Ed.2d —— (1998).

The facts as stated by the Court are:

In January 1983, petitioner Margaret Kawaauhau sought treatment from respondent Dr. Paul Geiger for a foot injury. Geiger examined Kawaauhau and admitted her to the hospital to attend to the risk of infection resulting from the injury. Although Geiger knew that intravenous penicillin would have been more effective, he prescribed oral penicillin, explaining in his testimony that he understood his patient wished to minimize the cost of her treatment.

Geiger then departed on a business trip, leaving Kawaauhau in the care of other physicians, who decided she should be transferred to an infectious disease specialist. When Geiger returned, he canceled the transfer and discontinued all antibiotics because he believed the infection had subsided. Kawaauhau's condition deteriorated over the next few days, requiring the amputation of her right leg below the knee.

*Id.* at ——, 118 S.Ct. at 976.

The Court's analysis is compelling:

We confront this pivotal question concerning the scope of the "willful and malicious injury" exception: Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury (as the Kawaauhaus urge), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)? The words of the statute strongly support the Eighth Circuit's reading.

. . . .

The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had

Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Id.* at ——, 118 S.Ct. at 977.

The Court held, "We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."

It is clear in the case before us that the failure of Popa to obtain workmen's compensation insurance was an intentional act that caused injury, as were the doctor's actions in *Geiger,* but Popa's failure to obtain insurance was not done, as in *Geiger,* with the actual intent to cause injury.

We hold that *Geiger* clearly and unmistakably means that plaintiff's expenses and damages arising out of the assault on him do not fall within the compass of 11 U.S.C. § 523(a)(6).

The judgment of the Bankruptcy Appellate Panel is affirmed.

No costs to either party.