190 F.3d 455 (6th Cir. 1999)
 In Re: Seymour Markowitz, Debtor.
Seymour Markowitz, Appellant,
v.
Carolyn Campbell, Appellee.
 No. 97-2075
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: October 29, 1998
Decided and Filed: September 23, 1999
 
 Appeal from the United States District Court for the Eastern District of Michigan at Detroit, No. 97-73042--Anna Diggs Taylor, District Judge.[Copyrighted Material Omitted]
 John C. Lange, GOLD, LANGE & MAJOROS, P.C., Southfield, Michigan, for Appellant.
 Lawrence J. Acker, Bloomfield Hills, Michigan, Clay E. Ottoni, CLAY E. OTTONI, P.C., Farmington Hills, Michigan, for Appellee.
 Before: BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.
 SUHRHEINRICH, J., delivered the opinion of the court, in which SILER, J., joined. BOGGS, J. (pp. 466-68), delivered a separate dissenting opinion.
 OPINION
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is non-dischargeable. 11 U.S.C. § 523(a)(6). The principal question before us is whether a debt arising from the legal malpractice judgment against Appellant, Seymour Markowitz, falls within this statutory exception. Finding jurisdiction proper in the district court and in this appeal, we AFFIRM the judgment below on the issue of collateral estoppel. However, we VACATE the judgment of the district court on the issue of dischargeability and REMAND the case for further proceedings consistent with this opinion and the recent decision of the Supreme Court in Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998).
 
 I.
 
 2
 Seymour Markowitz is a licensed attorney practicing in Michigan. On May 17, 1991, Markowitz filed a divorce action in Wayne County Circuit Court on Carolyn Campbell's behalf. On May 20, 1991, Campbell's husband filed an annulment action in the Oakland County Circuit Court. Also on May 20, Carolyn Campbell personally delivered papers served upon her for the Oakland County action to Markowitz. Markowitz did not file a response to the Oakland County action and a default judgment was entered against Carolyn Campbell on August 23, 1991. On September 20, 1991, Markowitz prevailed on a motion to dismiss the Oakland County action. Afterward, Campbell's husband gave Markowitz a proposed order dismissing the action along with notice that the dismissal order would be entered within seven days. Markowitz did not file objections and neither approved nor contested it. As a result, the dismissal of the action failed to vacate the default judgment and the dismissal order did not correct the record, i.e., it was not entered nunc pro tunc, and the default judgment remained despite the dismissal. Carolyn Campbell continued to be garnished and her husband began attempting to collect on the default judgment. (J.A. at 99-100). Markowitz testified that he believed the dismissal order effectively vacated the default judgment and that no specific language other than that granting the dismissal of the cause was required in the order. (J.A. at 98-101). Therefore, he felt that no further action was necessary and that the default judgment could not be enforced, despite the fact that the dismissal order did not expressly vacate the default judgment or enter the dismissal nunc pro tunc. (J.A. at 98-101). Thereafter, Markowitz withdrew as Campbell's counsel on November 27, 1991, at which time the dismissal of the Oakland County action remained in effect.
 
 
 3
 Upon appeal by Campbell's husband, the Michigan Court of Appeals reversed the Oakland County dismissal -- reinstating the case in Oakland County and reinstating the default judgment of annulment. Markowitz was no longer Carolyn Campbell's attorney. Subsequent efforts by Carolyn Campbell to have the default judgment set aside were denied by the Oakland County Circuit Court. And, ultimately, the Wayne County Circuit Court dismissed the action pending in that court because jurisdiction had been obtained in the matter by the Oakland County Circuit Court.
 
 
 4
 Although Campbell had often requested that Markowitz take action and file responses and pleadings in the two courts, Markowitz failed to do so. Markowitz admitted that he knew Campbell could suffer a default from his actions. (J.A. at 93-94). He admitted that he filed no papers on her behalf in Oakland County prior to the default, and he admitted that this was a conscious decision. (J.A. at 96). Markowitzbelieved that the Wayne County action was pending and had precedence, (J.A. at 95), and that the dismissal of the Oakland County judgment effectively vacated the default. When Carolyn Campbell was issued a show cause order for failure to pay child support, Markowitz informed someone from the friend of the court, while in Oakland County Circuit Court on another matter, that there was a prior action in Wayne County and that the show cause order should therefore not proceed. While he was apparently instructed to bring in some proof of the same, he failed to do so. (J.A. at 77, 112). Markowitz's testimony also indicates that some of his actions or inactions were motivated by legal strategy. He claimed he never spoke with Mr. Campbell because it was his policy never to speak to defendants, despite the fact that Mr. Campbell was representing himself. (J.A. at 77, 111). He also believed that antagonizing Mr. Campbell would be antithetical to Carolyn Campbell's bargaining in pursuit of the law practice as an asset in the divorce. (J.A. at 77, 114). Finally, Markowitz testified that his actions were motivated by the best interests of his client. (J.A. at 77, 95, 96, 118).
 
 
 5
 On June 11, 1993, Campbell filed a civil action against Markowitz in the Wayne County Michigan Circuit Court alleging legal malpractice. On May 23, 1995, a jury found Markowitz liable for legal malpractice -- finding Markowitz was negligent and that his negligence was the proximate cause of Carolyn Campbell's injuries or damages. The jury awarded Campbell $300,000 in damages as a result of the entry of the default judgment.[1] On June 12, 1995, Markowitz filed for relief under Chapter 7 of the Bankruptcy Code. On October 10, 1995, Campbell commenced an adversarial proceeding against Markowitz alleging in Count I that her claim to the $300,000 judgment should be declared non-dischargeable under 11 U.S.C. § 523(a)(6) because it was a judgment resulting from willful and malicious injury.
 
 
 6
 Markowitz and Campbell filed cross-motions for summary judgment in the Bankruptcy Court as to Count I. On June 12, 1997, the Bankruptcy Court ruled in favor of Campbell, holding that the debt was non-dischargeable. (J.A. at 285-300). Judgment was entered on July 3, 1997. (J.A. at 26-27). The court relied on the record from the malpractice case and stipulations by the parties as to specific facts, including the stipulation that there were no genuine issues as to any material fact. (J.A. at 282) The district court affirmed the bankruptcy court's order -- granting Campbell's motion for partial summary judgment and denying Markowitz's cross-motion for summary judgment. (J.A. at 29). Markowitz then appealed to this court. (J.A. at 54).
 
 
 7
 Markowitz presents three issues on appeal. First, he argues that the malpractice suit decided the issue of willful and malicious injury and that litigation on that issue in the bankruptcy court was barred by collateral estoppel. Second, he contends that his conduct did not cause "willful and malicious injury." Finally, he argues that even if the debt was non-dischargeable, the damages attributable to the willful and malicious injury were unsupported by the record or excessive under the circumstances.
 
 II.
 
 8
 Initially, we must consider Campbell's challenge to our jurisdiction. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, ___, 118 S.Ct. 1003, 1012-13(1998). Campbell contends that we lack jurisdiction because the notice of appeal from the bankruptcy court to the district court was invalid.
 
 
 9
 On June 12, 1997, the bankruptcy court entered an order granting Campbell's motion for summary judgment and denying Markowitz's motion for summary judgment. Markowitz filed a notice of appeal to the district court on June 23, 1997. The same day he also filed a motion for rehearing (the "F.R.B.P. 9023 motion") in the bankruptcy court. On July 3, 1997, the bankruptcy court entered final judgment, without ruling on the motion for reconsideration. On July 15, 1997, the parties filed a stipulation of appellate rights with the district court. This stipulation was entered on August 11, 1997. On August 8, 1997, the bankruptcy court denied the motion for reconsideration.
 
 
 10
 The first issue is whether Federal Rule of Bankruptcy Procedure 9023 -- governing motions to amend or appeal a judgment, reconsideration, and rehearing -- divested the district court of jurisdiction pursuant to F.R.B.P. 8002(b). Bankruptcy Rule 8002(b) states, in part:
 
 
 11
 A notice of appeal filed after announcement or entry of the judgment, order, or decree but before disposition of any of the above motions is ineffective to appeal from the judgment, order, or decree, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding.
 
 
 12
 F.R.B.P. 8002(b). According to F.R.B.P. 8002(b), the notice of appeal -- filed after the order but before disposition of the F.R.B.P. 9023 motion -- was ineffective to perfect an appeal from the judgment until the entry of the order of the motion for reconsideration. As a result, the notice of appeal was not effective until entry of the August 8 order denying the motion to reconsider. Contrary to Campbell's contention, F.R.B.P. 8002 does not nullify the original notice and require refiling.[2] F.R.B.P. 8002 requires a new notice of appeal to be filed only if the motion to reconsider is itself appealed or if the disposition of that motion alters or amends the previous judgment. Thus, the notice of appeal was suspended until the bankruptcy court decided the F.R.B.P. 9023 motion but ripened upon disposition of that motion.[3] No new notice was required. The district court did not have jurisdiction over the appeal between June 23 and August 8. During that period, the district court set dates for oral arguments, a hearing, and briefing, and it took entry of several litigation materials. However, by the time the district court disposed of any issues in the case, it was vested with jurisdiction.
 
 
 13
 The second issue is whether the notice of appeal filed after the order but before final judgment is invalid because the June 12 order was not a final judgment. Even assuming the June 12 order lacked the requisite characteristics of finality,F.R.B.P. 8002(a) provides that "A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof." Thus, the non-final nature of the June 12 order did not nullify the notice of appeal. Bankruptcy Rule 8002(a) would have made the notice effective upon entry of the judgment on July 3. However, the F.R.B.P. 9023 motion had not been considered at that time; and the notice could not become effective because the judgment was not final. As explained earlier, F.R.B.P. 8002(a) mandates that the notice is suspended until disposition of the F.R.B.P. 9023 motion. Thus, the notice remained suspended, ripening and becoming effective on August 8 when the court denied the F.R.B.P. 9023 motion. No new notice was required because the ruling on the F.R.B.P. 9023 motion was not appealed and the August 8 disposition of that motion did not alter or amend the previous judgment.
 
 
 14
 For the forgoing reasons, the district court had jurisdiction when judgment was rendered on September 10, 1997. Consequently, we have jurisdiction to reach the merits of Markowitz's appeal.
 
 III.
 
 15
 During the state court trial, Campbell requested a special interrogatory to the jury "regarding whether or not Mr. Markowitz's decision making was intentional or willful." (J.A. at 125 (emphasis added)). The state court refused to give this instruction. On appeal, Markowitz argues that the trial court's refusal was tantamount to a finding that Markowitz's conduct was not willful. He further argues that this "finding" collaterally estops any claim in bankruptcy court that his actions were willful. As such, he contends that issue preclusion required the district court to dismiss the case. We disagree.
 
 
 16
 We review de novo the applicability of collateral estoppel. See, e.g., United States v. Sandoz Pharmaceuticals Corp., 894 F.2d 825, 826 (6th Cir.1990). The doctrine of collateral estoppel "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 480 (6th Cir.1992); accord Parklane Hosiery Co. v. Shore, 439 U.S. 322, 336 n.23 (1979) ("[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed."); Montana v. United States, 440 U.S. 147, 153 (1979).
 
 
 17
 Collateral estoppel will apply where (1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue, and (2) the issue was fully and fairly litigated in state court.[4] 28 U.S.C.A §1738 (West 1994); see also Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (noting that §1738 "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered"); Haring v. Prosise, 462 U.S. 306, 312-14 (1983).
 
 
 18
 Under Michigan law, collateral estoppel precludes the relitigation of an issue in a subsequent, different cause ofaction between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was actually litigated and necessarily determined. See People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990); see also United States v. Three Tracts of Property Located on Beaver Creek, 994 F.2d 287, 290 (6th Cir. 1993). An issue is actually litigated if it is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact. See Latimer v. Mueller & Son, Inc., 386 N.W.2d 618, 627 (Mich. Ct. App. 1986). An issue is necessarily determined if it is essential to the judgment. Gates, 452 N.W.2d at 631.
 
 
 19
 The jury verdict itself did not actually decide the issue of willfulness. In Michigan, a legal malpractice judgment requires no greater a finding than that the conduct was negligent. See Basic Foods Indust. v. Grant, 310 N.W.2d 26, 28 (Mich. Ct. App. 1981). Thus, the jury's finding of legal malpractice did not decide the issue of willful and malicious injury; it was not actually litigated. "[T]he jury's finding that [the attorney] acted with knowledge of a high probability of harm to his clients does not collaterally estop him from claiming that his actions did not constitute a willful and malicious injury." In re Conte, 33 F.3d 303, 307 (3d Cir. 1994); accord In re Kelly, 182 B.R. 255 (9th Cir. BAP, 1995), aff'd by In re Kelly, 100 F.3d 110 (9th Cir. 1996)(state court judgment finding debtor liable for legal malpractice only amounted to a finding of negligence, therefore it was not properly used to find malicious and willful injury based on the doctrine of collateral estoppel); Matter of Miller, 156 F.3d 598 (5th Cir. 1998)(collateral estoppel did not apply in §523(a)(6) proceeding where state court found that misappropriation or misuse of employer's proprietary information proximately caused harm), cert. denied, 119 S.Ct. 1249 (1999), and cert. denied, 119 S.Ct. 1250 (1999).
 
 
 20
 Moreover, Campbell's request for a special interrogatory also failed to actually decide the issue of willful and malicious injury. First, the state court's refusal to give the instruction is not the equivalent of a summary judgment that Markowitz's actions were not willful. Campbell was not asking the judge to instruct the jury regarding any cause of action. Instead, her attorney asked for the question precisely because it had "to do with a concern about discharge in bankruptcy." (J.A. at 125). Therefore, the judge's ruling against presenting the special question was neither the equivalent of a summary judgment ruling nor a ruling that there were no facts to support an intentional tort claim. It was not a ruling on the merits. Instead, the ruling extends no farther than a ruling on the relevancy of the question to those particular proceedings. The state court recognized that a finding on the question was neither necessary nor essential to judgment in that case.
 
 
 21
 Second, the proposed question itself simply asked "whether or not Mr. Markowitz's decision making was intentional or willful." (J.A. at 125 (emphasis added)). This is not the same as asking whether Markowitz intended to cause injury. Even an affirmative answer by the jury to that or a similar question would not collaterally estop either side in subsequent litigation on the §523(a)(6) issue[5]. An answer to thequestion posed would not resolve the §523(a)(6) issue precisely because non-dischargeability requires more than an intentional decision but also an intent to do harm. See Geiger, 118 S.Ct. at 977. Thus, a separate review of the facts in the bankruptcy discharge litigation was proper. There is no collateral estoppel.
 
 IV.
 
 22
 Next we consider Markowitz's claim that the bankruptcy court erred in denying his motion for summary judgment and granting Campbell's motion for summary judgment based on its finding that his conduct was "willful and malicious." We review a district court's order granting summary judgment de novo, and its findings of fact for clear error. See Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Resources, 141 F.3d 635, 639 (6th Cir. 1998); Terry Barr Sales Agency, Inc. v. All-Lock Co., 96 F.3d 174, 178 (6th Cir. 1996); Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996); Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 622 (6th Cir. 1996).
 
 
 23
 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] Fed. R. Civ. P. 56(c); accord Terry Barr Sales Agency, Inc., 96 F.3d at 178; Hartsel, 87 F.3d at 799; Holiday Inns, Inc., 86 F.3d at 622; Atlantic Richfield Co. v. Monarch Leasing Co., 84 F.3d 204, 206 (6th Cir. 1996). When reviewing a summary judgment decision, an appellate court must confine its review to the evidence as submitted to the district court. Landefeld v. Marion Gen. Hosp., 994 F.2d 1178, 1181 (6th Cir. 1993); Guarino v. Brookfield TP Trustees, 980 F.2d 399, 405-06 (6th Cir. 1992).
 
 
 24
 Section 523(a)(6) of the Bankruptcy Code contains an exception to the dischargeability of debts. It provides:
 
 
 25
 (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt
 
 
 26
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
 
 
 27
 11 U.S.C. § 523(a)(6). From the plain language of the statute, the judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt.
 
 
 28
 The recent decision by the Supreme Court in Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998), addressed the "pivotal question concerning the scope of the 'willful and malicious injury' exception" presented here: whether "§523(a)(6)'s compass cover[s] acts, done intentionally, that cause injury . . . or only acts done with the actual intent to cause injury." Id. at 976. At issue in Geiger was the dischargeability of a debt arising from a damages award for medical malpractice. Margaret Kawaauhau sought treatment from Dr. Geiger for a foot injury. Geiger admitted Kawaauhau to a hospital to attend to the risk of infection. Geiger knew that intravenous penicillin was more effective than oral penicillin, but prescribed oral penicillin because he understood that the patient wanted to minimize costs. Geiger left on abusiness trip and left Kawaauhau with other physicians. Although the other physicians had decided she should be transferred to an infectious disease specialist, Geiger canceled the order upon his return. He also discontinued all antibiotics, believing that the infection had subsided. Over the next few days, Kawaauhau's condition deteriorated and her right leg was amputated below the knee. Geiger intentionally rendered inadequate medical care by deliberately choosing less effective treatment in order to cut costs. Id. at 976-77. The bankruptcy court determined that Geiger's treatment fell far below the appropriate standard of care and held the debt non-dischargeable. In re Geiger, 172 B.R. 916, 922-23 (Bankr. E.D. Mo. 1994). Yet the Supreme Court held that even when actions fall so far below professional standards, they will not necessarily be "willful and malicious" and will not necessarily, therefore, be non-dischargeable under § 523(a)(6). Geiger, 118 S.Ct. at 977.
 
 
 29
 The Court held that "willful" means "voluntary," "intentional," or "deliberate."[7] Id. at 977 n.3. As such, only acts done with the intent to cause injury -- and not merely acts done intentionally -- can cause willful and malicious injury. The Court explained its holding by discussing the importance of context:
 
 
 30
 The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).
 
 
 31
 Id. at 977. The Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of §523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.[8] Nonetheless, from the Court's language and analysis in Geiger, we now hold that unless "the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it," Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a "willful and malicious injury" as defined under §523(a)(6).
 
 
 32
 Although the Sixth Circuit recognized a much broader definition of "willful and malicious" in Perkins v. Scharffe, 817 F.2d 392(6th Cir. 1987)(holding that willful and malicious injury will occur when one intends the act regardless of whether he intends the consequence), "the formulation in Perkins . . . of the intent necessary to find a debt non-dischargeable under §523(a)(6) has been overruled by the Supreme Court in Geiger."[9] See In re Bullock-Williams, 220 B.R. 345, 347 (6th Cir. BAP 1998)(condominium owner's failure to pay fees to the association did not demonstrate the necessary intent to cause harm to the association when record indicated that the debtor thought the fees were being paid by either the Chapter 13 trustee or her children); accord In re Evans, Nos. 98-60037, 98-6078, 1998 WL 404178 (Bankr. N.D. Ohio, 1998)("[Geiger] effectively overruled the Sixth Circuit's decision in Perkins . . . ."). We agree. See In re Abbo, 168 F.3d 930 (6th Cir. 1999)(adopting Geiger in affirming finding that a malicious prosecution judgment was non-dischargeable). In light of Geiger, the bankruptcy court's reliance on the Perkins standard (J.A. at 294) was incorrect. We hold that the Perkins standard for "willful and malicious injury" was effectively overruled by the Supreme Court in Geiger and we now expressly overrule that standard.
 
 
 33
 It is clear throughout the bankruptcy court's opinion that its conclusion of non-dischargeability is based entirely on the now rejected Perkins standard. For example, the court states the following: "While [Markowitz] may not have 'intended' to harm Plaintiff, lack of such intent does not, under the case law, preclude a finding of willful and malicious. What is necessary, and what the Court finds to be present in very basic terms, is an intentional act which necessarily led to injury." The only factual findings actually made by the bankruptcy court were that Markowitz intended to do the acts, and those acts were causally related to Campbell's injury.
 
 
 34
 On the basis of the stipulated record and those limited findings, we do not believe that there is a sufficient basis to show that Markowitz intended injury.[10] If we were to apply Geiger to the record before us, without more, Markowitz would be entitled to summary judgment. However, the intervening Supreme Court decision between the fact-finding stage and appeal requires a reevaluation of the case, an action properly conducted in the court below. As the record is currently constituted, the stipulation of facts by counsel reflects their reliance on proof as required by this Circuit under Perkins rather than the different standard now controlling under Geiger. In addition, had the bankruptcy court operated under the Geiger standard, it may have made additional credibility findings beyond those needed to evaluate the case under the Perkins standard. Therefore, because neither the parties nor the bankruptcy or district court were aware of the proper standard or proofs required under Geiger, we deem itappropriate to remand the case to reconsider this matter and apply the Geiger standard.
 
 V.
 
 35
 Because we find further proceedings are necessary to determine whether discharge is appropriate, we do not address the issue regarding the proper calculation of damages.
 
 VI.
 
 36
 The judgment is AFFIRMED IN PART, to the extent we hold that jurisdiction was proper in the district court and remains so on appeal to this court, and the state malpractice action has no collateral estoppel effect. The judgment is VACATED IN PART, regarding the determination of the existence of willful and malicious injury; and the case is REMANDED for further proceedings to resolve the issue of dischargeability for willful and malicious injury in accordance with this opinion and Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998).
 
 
 
 Notes:
 
 
 [1]
 Pursuant to the terms of the default judgment, Carolyn Campbell did not get custody of her daughter, she was required to pay child support, she was ordered to pay the costs of her daughter's college education, she was ordered to pay $115,000 to Mr. Campbell, and Mr. Campbell was awarded the marital home and his law practice. (J.A. at 77, 84, 97). Shortly thereafter, Carolyn Campbell's wages were garnished, her bank account was levied upon, and her automobiles taken to partially satisfy the judgment. (J.A. at 256, 262-63, 77, 102-104, 109).
 
 
 [2]
 Appellee relies on Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982), a case interpreting the language of Fed.R.App.P. 4(a)(4) prior to the 1991 amendment. The language at that time held that a premature notice of appeal was nullified upon the filing of a F.R.B.P. 9023 motion. Now, however:
 This rule as amended provides that a notice of appeal filed before the disposition of a specified postjudgment motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the district court or bankruptcy appellate panel.
 F.R.B.P. 8002, Committee Note to 1994 Amendments.
 
 
 [3]
 For cases so holding based on identical language in Fed.R.App.P. 4(a)(4) and Fed.R.Civ.P. 59, see United States v. Duke, 50 F.3d 571, 575 (8th Cir. 1995); Barber v. Whirlpool Corp., 34 F.3d 1268, 1273-74 (4th Cir. 1994); Narey v. Dean, 32 F.3d 1521, 1523-24 (11th Cir. 1994); Leader Nat'l Ins. Co. v. Industrial Indem. Ins. Co., 19 F.3d 444, 445 (9th Cir. 1994).
 
 
 [4]
 For an application of Michigan rules of issue preclusion (collateral estoppel) and claim preclusion (res judicata) by the Sixth Circuit, see Perez v. Aetna Life Ins. Co., 96 F.3d 813, 820-21 (6th Cir. 1996); Warda v. Commissioner, 15 F.3d 533, 537 (6th Cir. 1994); Smith, Hinchman and Grylls, Assocs. v. Tassic, 990 F.2d 256, 257-58 (6th Cir. 1993); Kaufman v. BDO Seidman, 984 F.2d 182, 184 (6th Cir. 1993); Katt v. Dykhouse, 983 F.2d 690, 693-94 (6th Cir. 1992); Fellowship of Christ Church v. Thorburn, 758 F.2d 1140, 1144-45 (6th Cir. 1985) (per curiam).
 
 
 [5]
 In Conte, the jury answered the following interrogatory in the affirmative:
 It has been admitted by Mr. Conte that as of June 1980 he was aware that his client's case against Dr. Gerry Brown had been dismissed by the court. Do you find that he deliberately omitted informing his clients of the fact that their case was dismissed with knowledge of a high degree of probability of harm to Mr. and Mrs. Gautam and reckless indifference to the consequences of his omission?
 In re Conte, 33 F.3d 303, 305 (3d Cir. 1994). The Third Circuit ruled that the affirmative finding of the jury did not collaterally estop the attorney from claiming in the subsequent bankruptcy proceeding that his actions were not willful and malicious.
 
 
 [6]
 These same rules of review also apply where the parties have filed cross-motions for summary judgment. Atlantic Richfield Co., 84 F.3d at 206. The court must evaluate each motion on its own merit and draw inferences against the party whose motion is being considered. Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994); Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991).
 
 
 [7]
 Citing Black's Law Dictionary 1434 (5th ed.1979); S.Rep. No. 95-989, p. 79 (1978), U.S. Code Cong. & Admin. News pp. 5787, 5864; H.R.Rep. No. 95- 595, p. 365 (1977), U.S. Code Cong. & Admin. News pp. 5963, 6320.
 
 
 [8]
 The Eighth Circuit, on the other hand, gave the Restatement greater attention in its opinion, equating §523(a)(6) with intentional torts, defined as actions where the actor desires to cause injury or believes that injury is substantially certain to result from his acts. Geiger v. Kawaauhau, 113 F.3d 848, 852 (8th Cir. 1997), aff'd, 118 S.Ct. 974 (1998).
 
 
 [9]
 "Perkins is cited by the Supreme Court in a list of cases that are contrary to the interpretation of §523(a)(6) adopted in Geiger. Accordingly, we are constrained to apply the new standard enunciated by the Supreme Court in Geiger." In re Bullock-Williams, 220 B.R. at 347.
 
 
 [10]
 We note that under Geiger, the lack of an excuse or justification for his actions will not alone make Markowitz's debt non-dischargeable under §523(a)(6). See, e.g., In re Popa, 140 F.3d 317 (1st Cir. 1998)(gas station owner's failure to obtain worker's compensation insurance in violation of law, location of station in known, high crime area, and knowledge of recent robberies at station did not make him responsible for willful and malicious injury under §523(a)(6) after night shift employee was severely beaten), cert. denied, 119 S.Ct. 163 (1998). Moreover, like Dr. Geiger who should have known under reasonable professional standards that his treatment methods risked injury to his patient, Geiger, 118 S.Ct. at 977-78, the mere fact that Markowitz should have known his decisions and actions put Carolyn Campbell at risk is also insufficient to establish a "willful and malicious injury." He must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.
 
 
 DISSENT
 
 37
 BOGGS, Circuit Judge, dissenting. I would affirm the judgment of the district court based on the bankruptcy court's holding.
 
 
 38
 The court holds that the courts below applied the wrong legal standard, yet remands the case for additional factfinding. I believe that facts in the record, sufficient to affirm the judgment of the district court, support the judgments below, and we are not at liberty to disregard them in our deliberations.
 
 
 39
 We review the bankruptcy court's findings of fact for clear error, its understanding of the legal standard for "willful and malicious" injury de novo, and its application of the standard to the facts de novo. If we determine that the factfinding below was not clearly erroneous, and that the proper legal standard applied to those facts indicates that Markowitz acted willfully and maliciously under §523(a)(6) of the Bankruptcy Code, we must affirm the decision regardless of whether the courts below applied the correct legal standard.
 
 
 40
 * The court finds an error of law below: improper reliance on our decision in Perkins in light of the Supreme Court's later decision in Geiger. Regardless of the standard applied by the courts below, I believe that the facts supporting the bankruptcy court's holding require affirmance under Geiger.
 
 
 41
 In Geiger, the Court explicitly adopted the intentional tort standard, which requires "that the actor intend 'the consequences of the act,' not simply 'the act itself.'" Id. at 977 (quoting Restatement (Second) of Torts §8A, cmt. a, p. 15 (1964)).
 
 
 42
 The Restatement (Second) of Torts, quoted with approval in Geiger, explicitly states that actual desire to cause the harmful consequences is not required. "The word 'intent' is used throughout the Restatement ... to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts §8A (emphasis added). "If the actor knows that the consequences are certain, or substantially certain, to result from his act, ... he is treated by the law as if he had in fact desired to produce the result." Restatement (Second) of Torts §8A, comment b.
 
 
 43
 Markowitz committed an intentional tort if he believed that harm to Campbell was substantially certain to result from his action or failure to act. The parties stipulated to the accuracy of the state trial record, and that there were no disputed issues of material fact. After assessing these facts, the bankruptcy court held that Markowitz's actions were willful and malicious under §523(a)(6), which I think is correct.
 
 II
 
 44
 The record clearly shows that Markowitz changed his story about advising Campbell to respond to the Oakland County action. When he was sued, Markowitz denied that he advised Campbell not to respond to the Oakland action and declined responsibility for the results of the failure to defend the action. By the time of trial, Markowitz testified that he had recommended that course of action. Certainly, given Markowitz's about-face, the bankruptcy court's conclusion that Campbell's harm was not caused by a negligent strategic failure is "plausible in light of the record viewed in its entirety." Therefore, we cannot say on the record before us that it is clearly erroneous.
 
 
 45
 The parties stipulated that Markowitz knew that a default and default judgment would be entered if he failed to respond to the Oakland complaint; that he had read the Oakland County complaint and knew the relief sought by Mr. Campbell, and therefore the details of the default judgment that would be entered; that he made the decision not to respond in that action; that Campbell's husband was seeking to enforce a support order against Campbell; and that her wages were being garnished.
 
 
 46
 No inference to constructive knowledge is necessary. Markowitz actually knew that Campbell was being harmed by the Oakland County judgment. He knew that Campbell's husband was seeking to enforce a support order against Campbell. J.A. at 95. He also knew that her wages were being garnished. J.A. at 101-02, 104.[1] And while Markowitz acknowledges that he did respond to Campbell's concerns by asking the friend of the court not to enforce the Oakland County judgment and by moving, after the judgment, to dismiss the Oakland County action, he did not follow through on either of these efforts[2].
 
 
 47
 Markowitz knew that harm would come to Campbell as a result of his actions, and he did them anyway. Therefore, he must have believed that harm to Campbell was substantially certain to follow. His conduct satisfies the Geiger test and was properly held to be willful and malicious. In order to conclude that Markowitz's actions do not meet the requirements of the Geiger test, one must set aside the bankruptcy court's assessment of the stipulated facts.
 
 III
 
 48
 We are not at liberty to hold that facts concerning whether Markowitz believed that his failure to act would have no effect, and consequently whether Markowitz did not believe that his actions were substantially certain to harm Campbell, have not been found. The bankruptcy court's judgment rests on its assessment of the facts based on the parties' stipulation that there were no disputed facts. Viewed in its entirety, the record supports the plausibilityof the bankruptcy court's assessment. Applying the Geiger standard to these facts, Campbell is entitled to summary judgment. Markowitz's actions were not merely severely poor strategy, they constituted an intentional tort.
 
 
 49
 I therefore respectfully dissent, and would affirm the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 Markowitz denied that he knew Campbell's wages were being garnished at the time that he was representing her. J.A. at 100-01. However, when asked about the contents of a letter that Campbell wrote to him during his representation, which criticized Markowitz for failing to get the Oakland County default judgment properly set aside and to "put an end to Fletcher's ability to continuously garnishee [Campbell's] wages," J.A. at 102, Markowitz testified that "[w]e had already discussed all of it," J.A. at 104.
 
 
 [2]
 The friend of the court asked Markowitz to bring proof of the Wayne County action, which he never did. The Oakland County court granted Markowitz's motion to dismiss, but instead of writing a proposed order himself or objecting to Mr. Campbell's proposed order, Markowitz simply accepted Mr. Campbell's proposed order. As it turned out, the dismissal was vacated on appeal because, after judgment had been entered, Markowitz should have moved to set aside the judgment rather than to dismiss.
 Egregious as they sound, these blunders are not, by themselves, evidence that Markowitz constructively intended harm to Campbell. However, Markowitz's erratic representation and his posturing about his actions refute his claim that he had the strategy he now claims to have had for the Campbell divorce (or, indeed, any strategy at all).