**In re Robert L. SECREST, Debtor.**

**Pauline Stamm–Lingo, Plaintiff,**

v.

**Robert L. Secrest, Defendant.**

**Bankruptcy No. 99–56423.**
**Adversary No. 99–357.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Oct. 27, 2000.

Douglas J. Schockman, Matan, Greer & Wright, Columbus, OH, for Plaintiff.

Stephen D. Estelle, Columbus, OH, for Defendant.

Myron N. Terlecky, Columbus, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Assistant U.S. Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This adversary proceeding came before the Court on July 6, 2000, for a trial on a complaint filed by the Plaintiff, Pauline Stamm–Lingo ("Plaintiff"). The Plaintiff seeks an order declaring nondischargeable a judgment entered in her favor by the Franklin County Common Pleas Court, pursuant to sections 523(a)(2)(A) and/or (a)(6).[1] The Court finds the Plaintiff has failed to sustain her burden of proving that: a) the Debtor, Robert L. Secrest ("Defendant"), made false statements regarding his credentials or ability to complete the work he was hired to perform; b) he intended to deceive the Plaintiff; c) she justifiably relied on Defendant's representations; d) the Defendant's actions were the proximate cause of any loss; and e) the debt owed by the Defendant was incurred as a result of the Defendant's intent to cause injury. What follows is a brief statement of the facts and analysis which led the Court to this conclusion.

The Plaintiff and the Defendant became acquainted in September 1995, when the Defendant was an eighteen-year-old senior at Fairfield Career Center and Vocational School for Gahanna Lincoln High School. The parties were introduced by the Plaintiff's granddaughter, Nicole Burdette. At the time she met the Defendant, the Plaintiff was interested in purchasing 478–480 East Gates Street in Columbus, Ohio. The property had been badly damaged by fire, and the Plaintiff knew it needed substantial repairs. She intended to rehabilitate the property for rental. No evidence was presented as to whether the Plaintiff had any experience in hiring contractors, rehabilitating property, or serving as a landlord.

The Defendant informed the Plaintiff that he was interested in being hired to rehabilitate the property and gave her his business card, which displayed the name of his construction company, "Secrest Contracting." The Defendant's business card also stated that he was licensed and bonded, although it did not state that these credentials were valid only in the city of Gahanna. The Defendant credibly testified, however, that he orally informed the Plaintiff he was not licensed or bonded in the city of Columbus.

---

1. Unless otherwise noted, all statutory citations will refer to Title 11 of the United States Code, a.k.a. the Bankruptcy Code.

The Plaintiff's complaint also included a section 523(a)(4) claim; however it was abandoned at trial.

The Defendant had only a modest amount of experience in the construction business, limited to being a student in his vocational school's carpentry program, and assisting family and friends with small carpentry and painting jobs. He had never undertaken or assisted in the rehabilitation of houses as badly damaged as 478–480 East Gates, and he admitted having no experience in the operation of a business, including managing and training employees, or preparing and maintaining business records.

Notwithstanding his limited experience, the Defendant informed the Plaintiff he would be able to do the work necessary to render the property habitable. This, apparently, was all the assurance the Plaintiff needed. She hired the Defendant, and gave him sole responsibility for rehabilitating 478–480 East Gates, as well as 488–488½ East Gates, which the Plaintiff subsequently purchased and which had been severely vandalized. The Defendant commenced work on the houses in late November 1995.[2]

The parties had no written contract, and the Plaintiff and Defendant offered conflicting testimony on the terms of compensation. According to the Plaintiff, she agreed to pay the Defendant $25.00 per hour. The Defendant testified more credibly that they originally agreed he would be paid at the end of the project in an amount equal to fifty percent of the cost of the rehabilitation. Soon after he began working, however, the Plaintiff offered to pay him as the work progressed, subject to the fifty percent ceiling. The Defendant testified that after the Plaintiff terminated his employment, their oral contract was modified a third time, to value his work at $25.00 per hour for the purpose of liquidating the obligations under the arrangement. The parties agree that the Plaintiff was to pay for all additional labor, materials and necessary equipment as the work progressed, and that the Defendant was to provide the Plaintiff with receipts for materials or equipment purchased for the project.

At the outset of the project, whenever the Defendant required funds to pay laborers or purchase materials, he requested a check or cash from the Plaintiff. This arrangement proved cumbersome; however, and at the Defendant's request, the Plaintiff opened a checking account that bore her name as well as the Defendant's. The Defendant was given authority to write checks on the account and to make cash withdrawals. The Defendant routinely wrote checks to pay for materials, and to himself and others as compensation for labor performed on the properties.

After receiving two bank statements which noted many cash withdrawals, the Plaintiff began questioning the Defendant to obtain receipts. The Defendant was able to provide some receipts, but could not account for all of the cash withdrawn. The Defendant testified the funds were used to purchase materials from vendors reluctant to accept personal checks and for laborers who preferred to be paid in cash. The Plaintiff admitted she knew that as many as nine people in addition to the Defendant worked on the houses, and that these individuals were being paid in cash. The dispute over expenses, as well as the Plaintiff's unhappiness with the rate at which the project was progressing, caused the Plaintiff to terminate the Defendant's employment in early February 1996.

On February 29 and March 1, 1996, the Plaintiff and Defendant met to determine where the money had been spent and any sums the Defendant was owed. These meetings were unsuccessful, and the Plaintiff requested additional documentation.

---

2. The parties also agreed that Defendant would perform and be compensated for work done on a third property located on Glenn Avenue in Columbus, Ohio, and on a motor vehicle belonging to the Plaintiff. Whether this agreement existed at the outset of the business relationship between the Plaintiff and Defendant is not clear, but the parties do not dispute its existence.

At the Plaintiff's request, the Defendant attempted to compile an accounting of the time he had devoted to working on the houses, including time spent not only at the properties, but time taken to negotiate with vendors, obtain permits, and other tasks not related to physical labor on the premises. The Defendant credibly testified this accounting was difficult to prepare, because the Plaintiff had not required him to record his hours at the outset of their arrangement. The Defendant logically explained this was due to their agreement that he would be paid a flat rate, based on a percentage of the cost of the rehabilitation. Nonetheless, he prepared an invoice for each of the two properties, and presented them to the Plaintiff. The invoices reflected that the Defendant worked in excess of four hundred hours over the time he was employed by the Plaintiff. The Plaintiff testified that she did not believe the Defendant worked as many hours as he declared on the invoices. The meetings and invoices failed to result in a resolution of the parties' differences.

On July 8, 1998, the Plaintiff sued the Defendant in Franklin County Common Pleas Court, alleging violations of Columbus Municipal Code section 4114.01, *et seq.*, and of Ohio's Consumer Sales Practices Act, O.R.C. section 1345.01, *et seq.* After the Defendant failed to answer or otherwise respond to the Plaintiff's complaint, the common pleas court entered a judgment against him by default on February 22, 1999. On February 25, 1999, Franklin County Common Pleas Court Magistrate Rita Bash Eaton issued a decision awarding the Plaintiff compensatory damages in the amount of $33,676.00 and punitive damages in the amount of $25,000.00. Magistrate Eaton's decision was reduced to judgment on April 1, 1999. The Defendant filed a petition for relief under chapter 7 of the Bankruptcy Code on July 16, 1999, and the Plaintiff's complaint commencing this adversary proceeding was filed on October 22, 1999.

■ In order to establish that a debt is nondischargeable under section 523(a)(2)(A), a plaintiff must prove that:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

(2) the debtor intended to deceive the creditor;

(3) the creditor justifiably relied on the false representation; and

(4) its reliance was the proximate cause of loss.

*In re Rembert,* 141 F.3d 277, 280–281 (6th Cir.1998) *cert. denied* 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998). The Plaintiff must prove each of these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 n. 11, 111 S.Ct. 654, 661 n. 11, 112 L.Ed.2d 755 (1991). Any exception to discharge is to be construed strictly in favor of the debtor. *Rembert,* 141 F.3d at 281 *citing Manufacturer's Hanover Trust v. Ward (In re Ward),* 857 F.2d 1082, 1083 (6th Cir.1988).

■ The Plaintiff asserts the Defendant made the following statements, knowing them to be false:

(1) that he was licensed and bonded; and

(2) that he was able to do the work necessary to complete the rehabilitation of the properties.

The Plaintiff presented no evidence to prove the Defendant was not licensed or bonded. The Defendant credibly testified that he was licensed and bonded in the city of Gahanna, and that he informed the Plaintiff that he was not licensed and bonded in the city of Columbus. Based on the testimony offered, the Court cannot conclude the Defendant made false representations as to his credentials.

■ The Plaintiff also presented no evidence to prove the Defendant lacked the ability to perform the work necessary to complete the project. The Plaintiff merely complained that the work was not done

quickly enough, yet she presented no evidence that the work took an inordinate amount of time according to industry standards. The Court does not find it surprising that a high school student, working around school hours and on weekends, would not be able to completely rehabilitate two badly damaged duplexes within the approximately nine weeks that elapsed between the time the Plaintiff hired and fired him. The Plaintiff was aware of the Defendant's age, time restrictions and level of experience from the outset, yet she appears to have expected him to perform in the manner of an experienced, full-time contractor. The Court finds these expectations to have been unreasonable.

The Plaintiff asserted that the invoices she received from the Defendant were falsified. Yet, she offered no evidence (other than her uncorroborated testimony) of exactly what work was completed, and exactly how much time the work should have taken, according to industry standards. Without such evidence, the Court cannot conclude that the invoices were false. The Plaintiff failed to prove the Defendant intended to deceive her. The Court finds that the testimony of both the Plaintiff and Defendant established nothing more than a hastily-arranged, unwritten agreement, which predictably resulted in mutual dissatisfaction. The Defendant does not appear to have set out to lie, cheat or steal from the Plaintiff; he simply appears to have been eager and inexperienced.

The Plaintiff could and should have taken steps to protect herself by reducing the terms of the agreement to writing, and by not giving the Defendant essentially unsupervised access to a bank account. Instead, she appears to demand that the Defendant be held responsible for her disregard of the risks she assumed when she hired someone of the Defendant's youth and inexperience. The Plaintiff's reliance upon the Defendant's statements that he was capable of completing the project, which have not been proven false, should have been qualified in light of his age and experience, and the Plaintiff cannot now seek to hold the Defendant solely responsible for the injury she suffered. The Plaintiff has failed to establish that she justifiably relied on the Defendant's statements, and has failed to prove that the actions of the Defendant, rather than the Plaintiff's own lack of due diligence, were the proximate cause of any pecuniary loss.

The Plaintiff finally seeks a finding that the debt owed to her by the Defendant is nondischargeable under section 523(a)(6), which provides, in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The Sixth Circuit, relying on *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), has recognized that "only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury [of the kind encompassed by section 523(a)(6) ]." *In re Markowitz*, 190 F.3d 455, 464 (6th Cir.1999). The Sixth Circuit has explained that an actor must "will or desire harm, or believe injury is substantially certain to occur as a result of his behavior" in order for a debt resulting from his conduct to be nondischargeable. *Markowitz*, 190 F.3d at 466. Here, the Plaintiff has failed to prove anything other than that the Defendant was young and inexperienced. The evidence does not establish that the Defendant intended to cause injury to the Plaintiff.

In sum, the Court finds the Plaintiff has failed to sustain her burden of proving all of the elements necessary to prevail under sections 523(a)(2)(A) or (a)(6). Accordingly, the judgment entered in favor of the

Plaintiff in the Franklin County Common Pleas Court is **DISCHARGEABLE.**

**IT IS SO ORDERED.**