**In re Abraham L. RICE, Jr., Debtor.**

**MemphisFirst Community Bank, Plaintiff,**

v.

**Abraham L. Rice, Jr., Defendant.**

**Bankruptcy No. 02–17377.**
**Adversary No. 03–1092.**

United States Bankruptcy Court,
N.D. Mississippi.

March 26, 2004.

Lawrence Vaughn, Southaven, MS, for Debtor.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for summary judgment filed by the plaintiff, MemphisFirst Community Bank (MemphisFirst); no response having been filed by the defendant, Abraham L. Rice, Jr., (Rice or debtor); and the court, having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

As set forth in MemphisFirst's motion for summary judgment, to which no response was filed by Rice, the following facts are admitted by Rice in his answer to the adversary proceeding complaint, to-wit:

A. On December 10, 1999, Memphis-First entered into certain transactions with Rice whereby Rice executed a Commercial Guaranty Agreement wherein Rice guaranteed the repayment of a certain business loan made by MemphisFirst to Abe Rice Electric, Inc. ("Abe Rice Electric"), in the principal amount of $250,000.00. This business loan was in the nature of a credit line against which Abe Rice Electric could draw up to the maximum amount of $250,000.00. This business loan was secured by the accounts receivable of Abe Rice Electric, which security interest was properly perfected pursuant to Tennessee law. *Complaint Sec. IV., Paragraph 1.*

B. Rice is the sole shareholder, officer and director of Abe Rice Electric, thereby exercising control of all aspects of the business of Abe Rice Electric. *Complaint Sec. IV., Paragraph 1.*

C. By the terms of the loan agreement between MemphisFirst and Abe Rice Electric, Abe Rice Electric opened a clearing account with MemphisFirst into which all payments on accounts receivable of Abe Rice Electric were to be deposited. A certain amount of such deposits were to be and were, in fact,

used by MemphisFirst to offset the outstanding balance of principal and interest due on the line of credit. Abe Rice Electric was required by the loan documents to furnish quarterly financial statements to MemphisFirst. *Complaint Sec. IV., Paragraph 1.*

D. Abe Rice Electric began to draw against the credit line and began to deposit the accounts receivable in the clearing account. In mid-to-late 2000, Abe Rice Electric was slow to provide the required financial statements to MemphisFirst, and deposits to the clearing account decreased. Numerous demands were made to Abe Rice Electric to furnish the financial reports and other information required by the loan documents. When the documents were not forthcoming and deposits slowed further and MemphisFirst was unable to make personal contact with Rice, MemphisFirst froze the account. *Complaint Sec. IV., Paragraph 2.*

E. After the account was frozen, Rice finally contacted MemphisFirst and meetings were held in which MemphisFirst discovered that Rice was also the sole shareholder, officer and director of Amfil Electric, Inc. ("Amfil"), which did the same type electrical contracting work as Abe Rice Electric. It was also revealed that Rice in his sole and individual capacity as control person of Abe Rice Electric moved accounts receivable and contracts from Abe Rice Electric to Amfil for no consideration for the purpose of avoiding the security interest of MemphisFirst in such accounts receivable. *Complaint Sec. IV., Paragraph 3.*

F. Although promises were made by Rice that the funds and security interest would be restored, such never occurred and both Abe Rice Electric and Amfil filed for Chapter 7 bankruptcy in the Western District of Tennessee. *Complaint Sec. IV., Paragraph 3.*

Also in the motion for summary judgment, MemphisFirst paraphrased certain factual events which were excerpted from Rice's deposition taken on February 28, 2003, to-wit:

A. Both Rice and his wife, Maria V. Rice, were employees of Amfil during the period that receivables and contracts were moved by Abe Rice Electric to Amfil. Both Rice and his wife received payments from Amfil from the fund created from the receivables moved from Abe Rice Electric to Amfil in the amounts of approximately $92,488 in 2000 and $70,380 in 2001. *Rice Deposition Page 56, line 11 through Page 57, line 24.*

B. That Rice opened accounts at SouthTrust Bank for the purpose of keeping MemphisFirst from exercising its lien on the accounts receivable in the MemphisFirst account. *Rice Deposition Page 53, line 17 through Page 54, line 2.*

C. Rice acting alone as the sole director, officer and shareholder of the two corporations decided to divert the accounts receivable from the MemphisFirst account to the SouthTrust account. *Rice Deposition Page 35, line 2 through line 17.*

Having reviewed the deposition excerpts, the court concurs that the characterizations presented by MemphisFirst represent a fair and reasonable summarization of Rice's testimony. Consequently, the above and foregoing recitation of facts will be considered as undisputed insofar as the disposition of this motion for summary judgment is concerned.

### III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

### IV.

In its complaint, MemphisFirst contends that Rice either perpetrated a fraud against it pursuant to 11 U.S.C. § 523(a)(2)(A) or committed a willful and malicious act against it pursuant to 11 U.S.C. § 523(a)(6), when he transferred accounts receivable proceeds from his Abe Rice Electric, Inc., bank account at MemphisFirst to his Amfil Electric, Inc., bank account at SouthTrust Bank. As such, MemphisFirst contends that the indebtedness owed to it by Rice, or a certain portion of it, should be nondischargeable in his bankruptcy case.

The undisputed facts establish that Rice diverted accounts receivable proceeds from the MemphisFirst account to the SouthTrust account maintained by Amfil Electric. The undisputed facts also establish that this diversion was intentionally undertaken by Rice to shield these proceeds from the MemphisFirst security interest. As such, the court is of the opinion that the "liability phase" of this proceeding is appropriately addressed by § 523(a)(6) of the Bankruptcy Code, since Rice's actions constitute a willful and malicious conversion of the MemphisFirst collateral. *See, Luce v. First Equipment Leasing Corporation (In the Matter of Luce)*, 960 F.2d 1277 (5th Cir.1992), and *State of Texas v. Walker*, 142 F.3d 813 (5th Cir.1998), (quoting *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916)). Consequently, there is no need to address the allegations of fraud encompassed by § 523(a)(2)(A) of the Bankruptcy Code.

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt resulting from a willful and malicious injury caused by the debtor to another entity or to the property of another entity. The Fifth Circuit Court of Appeals articulated its standard for the application of § 523(a)(6) in *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir.1998). The court concluded that an injury is "willful and malicious" where the debtor's conduct would cause injury according to an objective substantial certainty of harm standard or upon a showing that the debtor had a subjective motive to cause harm. *See also, Pharr v. Ford (In re Ford)*, 276 B.R. 561 (Bankr.N.D.Miss.2001).

Some courts have taken a more narrow approach to excepting debts from discharge pursuant to § 523(a)(6) than that adopted by the Fifth Circuit. These decisions essentially hold that for a debtor's conduct to bring a debt within the dis-

charge exception for willful and malicious injury that the debtor must will or desire the harm, or believe that the injury is substantially certain to occur as a result of his behavior. *See, In re Markowitz,* 190 F.3d 455 (6th Cir.1999); *Carrillo v. Su (In re Su),* 290 F.3d 1140 (9th Cir.2002); and *Thiara v. Spycher Brothers (In re Thiara),* 285 B.R. 420 (9th Cir. BAP 2002). These cases reject the objective substantial certainty of harm standard, adopted by the Fifth Circuit in *Miller,* in favor of a completely subjective standard which requires proof of the debtor's intent.

In the matter before this court, there can be little doubt that Rice deliberately converted accounts receivable proceeds that were subject to the security interest of MemphisFirst. Therefore, regardless of the standard that might be applied, Rice's conduct is both willful and malicious insofar as § 523(a)(6) of the Bankruptcy Code is concerned. The motion for summary judgment is sustained, in part, as to Rice's liability for a nondischargeable debt. The amount of this liability must still be quantified.

### V.

■ The following sentence was included in the recitation of facts, to-wit: "Both Rice and his wife received payments from Amfil from the fund created from the receivables moved from Abe Rice Electric to Amfil in the amounts of approximately $92,488.00 in 2000 and $70,380.00 in 2001." Regardless, the court is of the opinion that the appropriate measure of damages in this proceeding is the precise amount of accounts receivable proceeds that were wrongfully diverted by Rice to the South-Trust account. The court cannot say within a reasonable degree of certainty that the sums of money received by Rice and his wife from Amfil in calendar years 2000 and 2001 should translate into the appropriate amount of the nondischargeable debt in Rice's bankruptcy case. As such, the court is of the opinion that an evidentiary hearing is necessary to quantify the amount of the liability. It will be subsequently set by the court.

### VI.

In summary, the court concludes as follows:

1. That MemphisFirst is entitled to partial summary judgment to the effect that Rice caused a willful and malicious injury to MemphisFirst, in violation of § 523(a)(6) of the Bankruptcy Code, by wrongfully converting accounts receivable proceeds that were subject to the security interest of MemphisFirst,

2. The appropriate amount of the nondischargeable debt, owed by Rice to MemphisFirst as a result of his willful and malicious conduct, is the total of the accounts receivable proceeds that were wrongfully diverted from the MemphisFirst account to the Amfil Electric account at SouthTrust Bank. An evidentiary hearing will be subsequently scheduled by the court to ascertain this amount

A separate order will be entered consistent with this opinion.