**IN RE: Patricia A. ZWEIFEL, Debtor.**

**Westbury Village Association, Plaintiff,**

**v.**

**Patricia A. Zweifel, Defendant**

**Case No. 14–55623**
**Adv. Pro. No. 14–2318**

United States Bankruptcy Court,
S.D. Ohio, Eastern Division.

Signed August 15, 2016

Magdalena E. Myers, Kaman & Cusimano, Columbus, OH, for Plaintiff.

Nicole Marie Churchill, Barr, Jones & Associates, Columbus, OH, for Defendant.

## OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

C. Kathryn Preston, United States Bankruptcy Judge

This cause came on for consideration of the Plaintiffs Motion for Summary Judgment (Doc. # 23) (the "MSJ"), filed by Westbury Village Association. The defendant Patricia A. Zweifel has responded to the MSJ (Doc. # 26), and the plaintiff filed a reply (Doc. # 27).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05–02 entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(*l*).

## I. Facts and Background

The facts central to this case that are without serious dispute may be summarized as follows: Patricia A. Zweifel ("Debtor") owns a condominium in a residential development known as Westbury Village Condominium. The Declaration of Covenants, Conditions, Restrictions and Assessments of Westbury Village Condominium and/or rules and regulations enacted by the Westbury Village Association (collectively, the "Declaration") requires that residents restrain and control the activities of any dogs they may own. At all times relevant, Debtor owned two dogs. Debtor failed to control her dogs. Westbury Village Association (the "Association" or "Plaintiff") filed suit against her in the Franklin County [Ohio] Common Pleas Court (the "State Court") seeking an order directing Debtor to comply with the Declaration and control her dogs or remove them from the premises. Debtor and the Association reached an agreement, upon which the State Court entered an agreed order in May 2011 directing Debtor to take all actions necessary to confine her dogs to her condominium patio, and leash them when outside of her patio (the "Agreed Order"). Debtor failed to comply with the Agreed Order, and after notice and hearings, the State Court granted the Association a preliminary injunction against Debtor, followed by a permanent injunction (the "Injunction") in July 2012, directing her to confine her dogs to her patio or have them on a leash, and to undertake all necessary steps to prevent the dogs from escaping her condominium patio and her control.

The Association was subsequently compelled to file three separate motions to procure Debtor's compliance with the Dec-

laration, the Agreed Order and the Injunction. As a result of the first motion by the Association, the State Court conducted a trial and in December 2012, the court found that Debtor repeatedly violated the State Court Orders (the Agreed Order, the preliminary injunction, and the Injunction), and ordered her to remove her dogs from the premises. Debtor ignored the order. The Association followed with a second motion for contempt. Debtor failed to respond to this one. In May 2013, the State Court found Debtor in contempt of court and again ordered her to remove her dogs. The order alerted her that if she failed to illustrate that the dogs were removed, the court would impose a fine of $100 per day.

This woke up Debtor: she filed a motion for relief from the May 2013 order. After a hearing in July at which Debtor appeared, her motion for relief was denied. What's more, the State Court entered judgment against her for $5200 for failure to remove the dogs, and warned her that more fines would be forthcoming if she continued to be recalcitrant.

The Association filed a third motion for contempt in September 2013. After yet another evidentiary hearing, in December 2013 the State Court held that the evidence "shows intentional, repeated violations of the court's numerous orders." The court noted that it had "repeatedly ordered [Debtor] to remove the dogs from

the property and ... made clear the sanctions for failing to do so." The court granted the Association judgment on the motions for contempt and fined Debtor $16,000 (the "Judgment").

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 8, 2014. The Association timely filed the Complaint commencing this adversary proceeding, seeking a determination that the debt owed the Association is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] In the Complaint (followed by an Amended Complaint), the Association alleged that Debtor willfully disobeyed the Agreed Order, and acted maliciously in that she knew that her conduct was in violation of the Agreed Order and that the violation was almost certain to cause harm. The Association further alleged that the Agreed Order "made [Debtor] substantially certain that by failing to contain her dogs, she risked substantial injury to the Association."

## II. 11 U.S.C. § 523(a)(6)

Because the overarching purpose of the Bankruptcy Code is to provide a fresh start to those in need of relief from the burden of their debt,[2] exceptions to discharge are to be strictly construed against the complaining party. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998).

---

1. In the MSJ, Plaintiff posits that the Court may decide this dispute in the Association's favor under either § 523(a)(6) or § 523(a)(7). Inasmuch as the Amended Complaint does not allege facts sufficient to frame a cause of action under or even mention § 523(a)(7), the Court will disregard that branch of the MSJ. In a footnote in the MSJ, Plaintiff suggests "to the extent that the Association is required to move the court to amend its Complaint to explicitly mention this additional ground for non-dischargeability, the Association does so here." This is insufficient to move the Court for such relief. *See* Fed.R.Civ.P. 15(b), made

applicable to adversary proceedings by Fed. R. Bankr.P. 7015, requiring a motion for leave of court to amend a pleading, Local Bankruptcy Rule 9013–1(a)(1)(A) requiring a memorandum in support of any motion or application, and Local Bankruptcy Rule 9013–1(a)(1)(C) requiring a 21 day notice of any motion and opposing party's opportunity to object. Plaintiff's suggestion in a footnote falls far short of the requirements of the rules.

2. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

However, the relief provided by the Bankruptcy Code is intended only for the "honest but unfortunate" debtor and not to protect perpetrators of fraud or those who engage in egregious conduct. *Grogan*, 498 U.S. at 287, 111 S.Ct. 654.

Section 523(a)(6) of the Bankruptcy Code provides in pertinent part:

> (à) A discharge under section 727 ... does not discharge an individual debtor from any debt—
>
> ...
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

The term "injury" is not defined by the Bankruptcy Code. The Seventh Circuit Court of Appeals has defined it as a "violation of another's legal right, for which the law provides a remedy." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir.2013) (citation and internal quotation marks omitted). The Sixth Circuit Court of Appeals has provided us further guidance:

> [T]he injury must invade the creditor's legal rights. Section 523(a)(6)'s term "willful ... means a deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (injuria) in the technical sense, not simply harm to a person." *In re Geiger*, 113 F.3d 848, 852 (8th Cir.1997), *aff'd*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *accord In re McKnew*, 270 B.R. 593, 640 (Bankr.E.D.Va.2001); *In re Russell*, 262 B.R. 449, 454 (Bankr.N.D.Ind.2001).

*Steier v. Best (In re Best)*, 109 Fed.Appx. 1, *6 (6th Cir.2004).

In analyzing the statute, the United States Supreme Court has concluded that because the word "willful" modifies the word "injury," § 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Thus, an intentional or deliberate act alone does not satisfy the requisites of willfulness and maliciousness under § 523(a)(6). "[T]he actor [must] intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974 (citation omitted). The Sixth Circuit Court of Appeals has recognized that "[t]he willful and malicious standard is a stringent one[.]" *Steier v. Best (In re Best)*, 109 Fed.Appx. 1, *4 (6th Cir.2004).

Willfulness is shown when it is demonstrated that the debtor either had a desire to cause the consequences of his act, or believed that injury was substantially certain to result from his conduct. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999) (the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior."). *See also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir.2001). " '[I]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.' " *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir.2005) (quoting *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n. 6 (9th Cir.2002)), *amended by*, 2005 WL 843584, 2005 U.S.App. LEXIS 5919 (9th Cir.Cal. Apr. 11, 2005). The focus is on the debtor's state of mind. The fact that the debtor *should* have known the consequences of his actions is not sufficient to satisfy the requirements of willfulness. *Markowitz*, 190 F.3d at 465 n. 10. Similarly, damages arising from conduct which is reckless or negligent do not fall within the parameters of § 523(a)(6). *Kawaauhau*,

523 U.S. at 59, 118 S.Ct. 974. Regarding what later became § 523(a)(6), the Senate Committee Report accompanying Senate Bill 2266, a precursor to the Bankruptcy Act of 1978, stated:

> Paragraph (5) provides that debts for willful and malicious conversion or injury by the debtor to another entity or the property of another entity are nondischargeable. Under this paragraph "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* [193 U.S. 473, 48 L.Ed. 754, 24 S.Ct. 505 (1904) ], held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

S. Rep. No. 95–989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5855.

 Maliciousness is "conscious disregard of one's duties or without just cause or excuse[.]" *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986); *Cash Am. Fin. Servs. v. Fox (In re Fox),* 370 B.R. 104, 119 (6th Cir. BAP 2007). Maliciousness does "not require ill-will or specific intent to do harm." *Wheeler,* 783 F.2d at 615; *Fox,* 370 B.R. at 119. The requirement of maliciousness is met when it is demonstrated that (1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action. *Jercich,* 238 F.3d at 1209. *See also Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228 (6th Cir.1991). The Tenth Circuit Court of Appeals has further explained that inquiry requires a focus on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor. . . ." *C.I.T. Fin. Servs., Inc. v. Posta (In re Posta),* 866 F.2d 364 (10th Cir.1989).

## IV. The Motion for Summary Judgment

### A. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment must illustrate that the facts are not genuinely disputed by pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials[.]" Fed.R.Civ.P. 56(c)(1). The party seeking summary judgment bears the initial burden of "informing the . . . court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also* Fed.R.Civ.P. 56(c)(3).

If the movant satisfies this burden, the nonmoving party may not rest on its pleading, but similarly must, by citation to particular parts of the record, demonstrate that a fact or facts are subject to dispute. Fed.R.Civ.P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The Judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Hirsch v. CSX Transp.,*

*Inc.,* 656 F.3d 359, 362 (6th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). "When determining whether the evidence is sufficient, the trial court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 n. 19 (6th Cir.1991) (citation omitted). Rather, the Court must deem as true the nonmovant's evidence and must view all justifiable inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit Court of Appeals has articulated the following analysis to undertake when evaluating a motion for summary judgment:

> [T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir.1997) (internal citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.,* 74 F.3d 722, 727 (6th Cir.1996) (citation omitted).[3] Determinations of credibility, weight to be given the evidence, and inferences to be drawn from the facts remain the province of the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. If otherwise appropriate, summary judgment may also be entered for a nonmoving party. *K.E. Resources, LTD. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.),* 119 F.3d 409, 412 (6th Cir.1997); *see also Celotex,* 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence."). *See also* Fed. R Civ. P. 56(f).

## B. ANALYSIS

In the MSJ, Plaintiff invokes the doctrine of issue preclusion, asserting that the Court may determine this matter based upon the rulings of the State Court and presenting extensive materials for the

---

**3.** Nonetheless, the Court is not required to "speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989).

Court's consideration.[4] The Association primarily relies on the State Court decisions and orders and the Judgment.[5] Plaintiff additionally urges that Debtor's violation of the State Court orders and the Injunction was *per se* willful and malicious, resulting in nondischargeability of any damages or debt arising therefrom pursuant to § 523(a)(6). The Court will address these theories in reverse order.

### (i) Per se Character of Violation or Contempt of State Court Orders

Some courts have indeed held that violation of a court order or a finding of contempt is *per se* willful and malicious injury. *See, e.g., PRP Wine Int'l, Inc. v. Allison (In re Allison),* 176 B.R. 60 (Bankr. S.D.Fla.1994); *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn),* 242 B.R. 229 (Bankr.W.D.N.Y.1999). It appears, however, that the Sixth Circuit Court of Appeals has not definitively ruled on the question. *See, Musilli v. Droomers (In re Musilli),* 379 Fed.Appx. 494, 498 (6th Cir. 2010). Although the *Musilli* court briefly discussed the effect of contempt of a court order in the context of dischargeability of debt—seemingly approving the concept—the court stopped short of holding that any finding of contempt of a court order constituted a willful and malicious injury *per se.* Other courts have concluded that a debt emanating from violation of a court order or a contempt sanction is not nondischargeable as a matter of law. These courts require a finding that the conduct leading to the violation or sanction gave rise to a willful and malicious injury. The court in *Liddell v. Peckham (In re Peckham),* 442 B.R. 62, 80 (Bankr.D.Mass.2010) opined that "[w]hether contempt sanctions are nondischargeable ... depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.' " *Id.* at 80 (citation omitted). Similarly, citing the Ninth Circuit Bankruptcy Appellate Panel, the court in *Field v. Hughes–Birch* flatly stated

A debtor's failure or refusal to obey a court order, alone, is not necessarily determinative· of a finding of willful and malicious injury under § 523(a)(6). "Section 523(a)(6) does not make 'contempt' sanctions nondischargeable *per se,* and neither does any other subpart of section 523(a)." *Suarez v. Barrett (In re Suarez),* 400 B.R. 732, 737 (9th Cir. BAP 2009), *aff'd* 529 Fed.Appx. 832, 2013 U.S. App. LEXIS 12608, 2013 WL 3070518 (9th Cir. June 20, 2013).

*Field v. Hughes–Birch (In re Hughes–Birch),*499 B.R. 134, 150 (Bankr.D.Mass. 2013). Both the Ninth Circuit BAP and the Eighth Circuit Court of Appeals have specifically declined to adopt a *per se* rule. *Suarez,* 400 B.R. at 737. The Court finds this approach persuasive and more consistent with the philosophy that exceptions to discharge are to be narrowly construed.

In this District, this makes sense, inasmuch as contempt under Ohio law can arise for conduct that is not intentional. Ohio Rev.Code Ann. § 2705.02(A) provides that a person may be found in contempt and face sanctions for "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]" Ohio Rev.Code § 2705.02(A). But a finding of civil contempt in Ohio does not require proof of purposeful, willing, or intentional violation of a trial court's prior order.

---

4. Debtor presented no evidentiary materials for the Court's consideration.

5. The various State Court decisions, orders and the Judgment were attached to the MSJ. The authenticity of the materials was not contested by Debtor.

*Pugh v. Pugh,* 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984).

"... the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court. *Second Nat'l Bank of Sandusky v. Becker,* 62 Ohio St., 289, 56 N.E., 1025, 51 L. R. A. 860 [ (Ohio 1900) ]...." *State v. Local Union 5760,* supra (172 Ohio St. 75), at page 83. Such being the case, proof of *intent* is not required in civil contempt. As the Supreme Court said in *McComb v. Jacksonville Paper Co.* (1949), 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599: "The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. *See United States v. United Mine Workers,* 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 [ (1947) ]; *Penfield Co. v. Sec. & Exch. Comm'n,* 330 U.S. 585, 590, 67 S.Ct. 918, 91 L.Ed. 1117 [ (1947) ]; *Maggio v. Zeitz,* 333 U.S. 56, 68, 68 S.Ct. 401, 92 L.Ed. 476 [ (1948) ]. *Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.*"

 *Windham Bank v. Tomaszczyk,* 27 Ohio St.2d 55, 271 N.E.2d 815 (1971). The Supreme Court of Ohio has also noted that "[i]t is no defense to a finding of civil contempt that a party acted in good faith...." *State ex ret. Adkins v. Sobb,* 39 Ohio St.3d 34, 36, 528 N.E.2d 1247 (1988). The standard under § 523(a)(6) requires a "willful injury" rather than willful conduct; the Court is hard pressed to conceive a situation in which unintentional conduct could give rise to a willful injury. Therefore, the Court declines to hold that a finding of contempt constitutes willful and malicious injury *per se.*

In support of the MSJ, Plaintiff submitted copies of the various State Court decisions, the Judgment and its Motions filed in the State Court. Other than a few affidavits attached to plaintiff's motions filed in State Court, which stated only that the affiant had seen Debtor's dogs running loose on the condominium premises, Plaintiff submitted no trial transcripts, depositions or other evidence with the MSJ. Without evidence to support the MSJ, this leaves the Court with the sole question whether the principle of issue preclusion operates in Plaintiff's favor.

### (ii) Issue Preclusion

 Courts apply the doctrine of issue preclusion, traditionally called collateral estoppel,[6] to prevent "parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing,* 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (Ohio 1994). This conserves judicial resources by minimizing repetitive litigation, protects parties from the cost and inconvenience of multiple lawsuits, and prevents inconsistent results. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Supreme Court has held that issue preclusion principles are applicable to dischargeability proceedings in bankruptcy cases. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge

---

**6.** The United States Supreme Court has expressed a preference for use of the term "issue preclusion" over the term "collateral estoppel." *See Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 702–03 (6th Cir.1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Within this opinion, the terms may be used interchangeably.

exception proceedings pursuant to § 523(a)."). Although bankruptcy courts have exclusive jurisdiction to determine dischargeability issues, this "does not require the bankruptcy court to redetermine all the underlying facts" of the case if they were previously determined in an earlier lawsuit. *Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981). "[W]here all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues." *Id.* at 228.

▇▇▇ The application of issue preclusion in a nondischargeability action depends on whether the prior state court judgment would be afforded preclusive effect under state law. *The Spring Works, Inc. v. Sarff (In re Sarff),* 242 B.R. 620, 624 (6th Cir. BAP 2000).

> In order to successfully assert collateral estoppel under Ohio law, a party must plead and prove the following elements: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must [be] identical to the issue involved in the prior suit.

*Id.* (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

The party against whom issue preclusion is being asserted here, Debtor, was the defendant in the State Court litigation with Plaintiff, thereby satisfying the first requirement. The State Court Judgment followed multiple trials at which both parties were present and represented by counsel, which satisfies the second requirement that the parties had full and fair opportunity to litigate. Thus, it is evident that the first two requirements have been satisfied.

▇▇▇ The third element of issue preclusion is whether the issues pertinent to the dischargeability action were actually tried and decided, and necessary to the State Court Judgment. Moreover, the issues in the State Court case must be identical to those presented in this adversary proceeding. To the extent the issues are identical, this Court is precluded from relitigating and re-deciding here those facts determined and conclusions drawn by the State Court. "[T]he whole premise of [issue preclusion] is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

> Ohio's collateral estoppel test requires that the issue involved in the present litigation must have been identical to the issue involved in the prior suit. In a dischargeability action, this generally means that if the factual issues in the state court proceeding were determined "using standards identical to those in the dischargeability proceedings, then collateral estoppel ... [will] bar re-litigation of those issues in the bankruptcy court." *Spilman v. Harley,* 656 F.2d 224, 226 (1981); *See also Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Murray v. Wilcox (In re Wilcox),* 229 B.R. 411, 417 (Bankr.N.D.Ohio 1998) (alteration in original). The question, then, is whether the facts determined by the State Court are the same facts that this Court must determine to resolve the issue of dischargeability.

▇▇▇ The State Court found that Debtor acted intentionally: the State Court magistrate's decision on which the

State Court Judgment was based stated that "[t]he evidence shows intentional, repeated violations by [Debtor] of the Court's numerous orders." Mot. Summ. J., Ex. 6, at 7. But this observation by the State Court focused on and characterized Debtor's acts, not the nature of any injury to Plaintiff. Although the State Court detailed the history of the case and the events precipitating the Judgment, the Court is unable to determine that Debtor specifically intended to injure Plaintiff. The State Court made no findings relative to Plaintiff's injury or which describe willfulness and maliciousness. Nor can the Court infer the same due to the lack of evidentiary support for the MSJ. As noted above, an intentional or deliberate act alone does not satisfy the requisites of willfulness and maliciousness under § 523(a)(6). Even knowledge on the part of the debtor that another's legal rights are being violated is insufficient alone to establish malice. *Steier v. Best (In re Best)*, 109 Fed.Appx. 1, *6 (6th Cir.2004) (citing *In re Mulder*, 306 B.R. 265, 270 (Bankr.N.D.Iowa 2004)). Moreover, the parameters for a finding of contempt under Ohio law belie the Plaintiffs assertion that issue preclusion operates in its favor. Inasmuch as Ohio courts do not require willfulness, intent, malice or other nefarious motive as a prerequisite for a finding of contempt, the State Court Judgment does not support application of the principle of issue preclusion because the issues before this Court were not the issues before the State Court. And any finding by the State Court which would bear on willfulness and maliciousness, as those terms are utilized in § 523(a)(6), were not necessary to the Judgment. Thus, the Judgment does not meet the third and fourth prongs of Ohio's test for issue preclusion and this Court cannot rely on the Judgment to conclude that Debtor caused willful and malicious injury to Plaintiff.

## V. Conclusion

The State Court Judgment falls to satisfy the requisites for application of the doctrine of issue preclusion, and Debtor's violation of same is not *per se* willful and malicious injury. Therefore, Plaintiff's Motion for Summary Judgment (Doc. # 23) is denied.

**IT IS SO ORDERED.**