*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 17b0005n.06

# BANKRUPTCY APPELLATE PANEL

### OF THE SIXTH CIRCUIT

---

IN RE: ZACHARY N. TROST; KIMBERLY A. TROST,

*Debtors.*

---

SHERRY TROST,

*Plaintiff-Appellee,*

*v.*

ZACHARY N. TROST; KIMBERLY A. TROST,

*Defendants-Appellants.*

No. 16-8024

---

Appeal from the United States Bankruptcy Court
for the Western District of Michigan at Grand Rapids.
No. 13-05887—James D. Gregg, Judge.

Decided and Filed: June 28, 2017

Before: DELK, PRESTON, and WISE, Bankruptcy Appellate Judges.

---

#### COUNSEL

---

**ON BRIEF:** Michael R. Behan, Okemos, Michigan, for Appellants. Troy R. Hendrickson, Chandler, Arizona, for Appellee.

---

#### OPINION

---

PAULETTE J. DELK, Bankruptcy Appellate Panel Judge. Debtors-Appellants Zachary Trost and Kimberly Trost appeal the Bankruptcy Court's order granting summary judgment to Plaintiff-Appellee Sherry Trost holding the debt owed to her non-dischargeable pursuant to

11 U.S.C. § 523(a)(6).  The debt arose from a judgment against Zachary and Kimberly for common law conversion.  The Bankruptcy Court found that the judgment established the elements of willful and malicious conversion of Sherry's property by Zachary and Kimberly.  Accordingly, the Bankruptcy Court granted summary judgment to Sherry on the basis of collateral estoppel.  For the reasons stated, we affirm.

## ISSUE ON APPEAL

The issue on appeal is whether the Bankruptcy Court erred in applying the doctrine of collateral estoppel to grant summary judgment to Sherry.

## JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the Bankruptcy Court.  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted).  A partial summary judgment order "that does not dispose of all parties and all claims is generally not immediately appealable[.]" *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009).  "Once the remaining parts of a case are dismissed or otherwise resolved, a grant of partial summary judgment becomes a final judgment." *Anderson v. Fisher (In re Anderson)*, 520 B.R. 89, 90–91 (B.A.P. 6th Cir. 2014) (citing *J.D. Pharm. Distribs., Inc. v. Save-On Drugs & Cosmetics Corp.,* 893 F.3d 1201, 1208 (11th Cir. 1990)).

In the present case, the Bankruptcy Court granted summary judgment on the § 523(a)(6) count of the complaint in May 2014.  However, because other counts of the complaint were still pending, the Panel dismissed an earlier appeal of the judgment as interlocutory.  Once all other counts of the complaint were dismissed, the litigation of the adversary case ended on the merits.  Thus, the judgment entered in May 2014 is now appealable.

> A grant of summary judgment is a conclusion of law, reviewed de novo. *Medical Mutual of Ohio v. K. Amalia Enters., Inc*., 548 F.3d 383, 389 (6th Cir. 2008). "Summary judgment is proper if the evidence, taken in the light most favorable to

the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007)). "Under a de novo standard of review, the reviewing court decides the issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (6th Cir. BAP 2007) (citing *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (6th Cir. BAP 2001)). "The determination of the applicability of collateral estoppel is also reviewed de novo." *Spring Works, Inc. v. Sarff* (*In re Sarff*), 242 B.R. 620, 623 (6th Cir. BAP 2000) (citing *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir. 1999)).

*In re Anderson*, 520 B.R. at 91.

## FACTS

This case involves the family of Fred Trost, the former star and owner of a television show called Michigan Outdoors. Michigan Outdoors ran for over 20 years locally in the western part of Michigan. During its time, the show accumulated significant debts, including, but not limited to, a multi-million dollar civil judgment known as the "Buck Stop Judgment." Initially, Fred or his businesses were responsible for the debts. However, at some point, Sherry, Fred's second wife, and nonparty JoAnn Cribley took ownership of the show and its assets, and agreed to assume liability for the show's debts so that Fred could continue to operate the show. Sherry incurred substantial tax liability as a result.

Debtor-Appellant Zachary is the son of Fred Trost and stepson of Sherry. Debtor-Appellant Kimberly is Zachary's wife. Zachary worked on the show with his father over the years. He also tried to manage the show's debts and keep it operational.

Following Fred's sudden death in July 2007, Sherry and Zachary came to an agreement. Zachary agreed to pay off the debts Sherry had incurred running the show, including tax debts and outstanding loans, in exchange for the assets that Sherry owned related to the show, including videotapes and memorabilia. Zachary took the assets from Sherry and tried to monetize them but was mostly unsuccessful. For two years Sherry's repeated requests that Zachary pay off the debts were largely ignored. When she ultimately demanded that he return the assets, Zachary refused.

In June 2009, Sherry sued Zachary and Kimberly for breach of contract and common law conversion in the United States District Court for the Western District of Michigan ("District Court"). During a three-day jury trial, in February 2012, Sherry testified, submitted exhibits, and called others to testify. "The trial evidence detailed the property at issue, how Sherry came to own it, the circumstances surrounding the formation of Sherry's contract with Zachary, Sherry's partial performance of it, and Zachary's breach." *Trost v. Trost*, 525 F. App'x 335, 339 (6th Cir. 2013) (unpublished). On the other hand, Zachary and Kimberly chose not to put on evidence and moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The District Court took the motion under advisement and submitted the case to the jury. The jury awarded Sherry $194,725.30 on the breach of contract claim. Additionally, the jury found both Zachary and Kimberly liable on the conversion claim, awarding Sherry $108,797.06 for tortious conduct.

After the jury's verdict, the District Court granted Zachary and Kimberly's motion for judgment as a matter of law regarding the breach of contract claim based on the statute of frauds, but denied the motion as to the conversion claim. Zachary and Kimberly appealed the denial of their motion regarding the conversion claim to the United States Court of Appeals for the Sixth Circuit ("Court of Appeals"). Sherry cross-appealed regarding her dismissed breach of contract claim. The Court of Appeals affirmed the District Court's decision on the conversion claim, but reversed the District Court's decision on the breach of contract claim and reinstated the jury's judgment on that claim.[1]

On July 23, 2013, Zachary and Kimberly filed a voluntary chapter 7 bankruptcy petition in the Western District of Michigan. Sherry filed an adversary proceeding on October 8, 2013, asserting that the debt should be excepted from discharge under § 523(a)(2) due to Zachary and Kimberly's fraud and/or § 523(a)(6) because it was the result of a willful and malicious injury. She also sought denial of Zachary and Kimberly's discharge under § 727(a) or dismissal of their bankruptcy case for lack of good faith.

On February 1, 2014, Sherry filed a motion for summary judgment only on the § 523(a)(6) count of her complaint. Sherry argued that the judgment for common law conversion

---

[1]The contract claim is not relevant to the current issue before the Panel.

established all of the elements required to hold the debt nondischargeable pursuant to § 523(a)(6) and that Zachary and Kimberly were precluded from arguing otherwise. Zachary and Kimberly filed a cross motion for summary judgment on all counts of the complaint. The Bankruptcy Court held a hearing on March 21, 2014, and issued an opinion granting Sherry's motion for summary judgment on the § 523(a)(6) count and denying Zachary and Kimberly's cross motion for summary judgment on May 12, 2014.[2] Zachary and Kimberly timely appealed.

## DISCUSSION

In the present case, Sherry asserted that the amount owed to her by Zachary and Kimberly pursuant to the judgment for conversion is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. The Bankruptcy Court agreed and granted summary judgment. The Panel has examined the record and determines that the previously litigated facts establish the elements required to find the debt nondischargeable.

### A.  Collateral Estoppel

Collateral estoppel, sometimes called issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir. 1999) (citations omitted). "The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated." *Chudzinski v. Hanif* (*In re Hanif*), 530 B.R. 655, 664 (Bankr. E.D. Mich. 2015) (citation omitted). Issue preclusion applies in nondischargeability litigation. *Grogan v. Garner*, 498 U.S. 279, 284–285, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991).

---

[2]Zachary and Kimberly attempted to immediately appeal the Bankruptcy Court's judgment. However, because some counts of the complaint were still pending, the BAP dismissed the appeal for lack of jurisdiction. On June 2, 2016, the remaining count of the complaint was voluntarily dismissed. Accordingly, the § 523(a)(6) judgment is incorporated into the final order dismissing the last count, which then ended the case. Thus, the Panel now has jurisdiction to review this matter.

Under federal law, the following elements must be present for the application of collateral estoppel based on a federal judgment:

(1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005). *See also John Richards Home Bldg. Co., LLC v. Adell* (*In re John Richards Home Bldg. Co., LLC*), 404 B.R. 220, 237 (E.D. Mich. 2009) (citations omitted) (federal courts apply federal law when determining preclusive effect of prior federal judgment).

All of the elements required for collateral estoppel are met. Zachary and Kimberly do not credibly dispute that elements four and five above are satisfied here. Therefore, on appeal, this Panel considers whether the other three elements are satisfied, and concludes that they are. Intentional torts may cause a "willful and malicious injury" under § 523(a)(6). The jury in the prior District Court action weighed and decided the facts in issuing the conversion judgment. And those facts were necessary to the judgment for common law conversion. Accordingly, the Bankruptcy Court did not err in applying collateral estoppel.

B. Common Law Conversion

Michigan law defines common law conversion "as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992) (citations omitted). Common law conversion "can be committed unwittingly if [the converter is] unaware of the plaintiff's outstanding property interest." *Id.* (citations omitted). However, if the converter's actions are willful, then the conversion is an intentional tort. *Id. See also Crestmark Bank v. Electrolux Home Prods.*, 155 F. Supp. 3d 723, 748 (E.D. Mich. 2016), *citing In re Pixley*, 456 B.R. 770, 787-88 (Bankr. E.D. Mich. 2011).

Zachary and Kimberly argued to the Bankruptcy Court and this Panel that their conversion of Sherry's property was "unknowing" rather than intentional. They made the same faulty argument to the District Court and the Court of Appeals. Following the jury's verdict against Zachary and Kimberly, the District Court entered an order denying their Rule 50(a) motion as to the conversion claim. In affirming the District Court's ruling, the Court of Appeals succinctly summarized the District Court's findings:

> [T]he court readily rejected Zachary and Kim's challenge to the conversion claim. It noted ample evidence showing that Sherry controlled the video library and the memorabilia, which she gave Zachary as part of the bargain to pay off debts she incurred running Fred's show. Zachary's email asking Sherry "how and when" she wanted to "take back" the property, as well as his overture to buy it from her, supported the view that the property was Sherry's. Zachary and Kim never suggested that they owned the property, or that Sherry did not. The court found the evidence fully supported the jury's conclusion that Sherry owned the property or, minimally, had an interest in it superior to theirs, and that the duo **acted tortiously** in keeping it after Sherry demanded its return.

> The court also rejected Kim's argument that the evidence was insufficient to hold her liable for conversion. Kim was involved in initially taking possession of the property and was "fully aware" of the negotiations between Zachary and Sherry. The jury, for example, was presented with an email Kim wrote to JoAnn on August 12, 2008, lamenting that if "the stock market had not dropped like it did, we would be able to pay off all the bills and everyone would be happy," and relating the difficulties of getting Tara to "come through to get the bills paid." In another email, responding to JoAnn's observation that Zachary "has thrown in the towel on the mess his dad left behind," Kim acknowledged that Zachary "feels like this is all his problem" because "his dad left him with this debt and he is responsible for it." And later, after Sherry demanded the return of her property, Kim did nothing, even though some of it was in her home. As neither Zachary nor Kim took the stand to contest any of this, the court concluded, the jury could reasonably find both defendants liable for conversion.

*Trost*, 525 F. App'x at 340 – 41 (emphasis added).

In affirming the District Court's ruling on the motion for judgment as a matter of law, the Court of Appeals also reviewed the evidence regarding Zachary and Kimberly's knowledge that the property they held belonged to Sherry. Although this evidence was recited in the context of an argument on appeal that Kimberly should not be held responsible, the language confirms that the evidence supported the finding that this was an intentional conversion by both.

> The record shows that Kim participated in taking Sherry's property, equally possessed it in her home, knew that Sherry demanded its return, and aided in the refusal to comply. Sherry testified that Kim helped her husband move the property to their home. Kim knew that she and Zachary had property for which Sherry expected payment, but explained to JoAnn that stock market losses made it difficult to come up with the money. Kim also confirmed Zachary's aim to honor the agreement in emails to JoAnn. Later, when Sherry's attorney sent a written demand to their home seeking return of the property, neither Zachary nor Kim responded. And in spite of being sued almost three years before the jury was impaneled, the property remained in their joint home.

*Trost*, 525 F. App'x at 343.

As noted by the Bankruptcy Court, the Sixth Circuit Court of Appeals has offered guidance on how to assess the preclusive effect of a prior judgment, stating that "the bankruptcy court should look at the entire record of the [prior] proceeding." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981). This the Bankruptcy Court did and, noting that Zachary and Kimberly did not refute it, correctly concluded that the evidence presented in the District Court action established that Zachary and Kimberly's conversion of Sherry's property was an intentional, not unwitting, conversion. Specifically, the Bankruptcy Court held:

> The evidence in the District Court action also conclusively established that Zachary and Kim Trost were aware that Sherry Trost owned the assets. Several witnesses testified at trial that Sherry and Zachary Trost entered into an agreement whereby Zachary would pay off the debts from Fred Trost's television show in exchange for the tapes and other memorabilia. *Trost*, 525 F. App'x. at 339. . . . As the District Court succinctly stated, "everyone involved"—including Zachary and Kim—"believed Sherry owned the video library and memorabilia." Order Granting in Part and Denying in Part Defendants' Motion for Judgment as a Matter of Law, USDC Dkt. No. 88 at 18.

*Trost v. Trost* (*In re Trost*), 510 B.R. 140, 152 (Bankr. W.D. Mich. 2014). Accordingly, the Bankruptcy Court's determination that Zachary and Kimberly's conversion of Sherry's property was intentional was fully supported by the evidence recited by the District Court in its ruling on Zachary and Kimberly's motion for judgment as a matter of law, and by the Court of Appeals in its decision affirming the District Court. Zachary and Kimberly are precluded from now arguing that they mistakenly believed that they owned the property and that this was a case of negligent conversion.

C. Nondischargeability pursuant to § 523(a)(6)

Pursuant to § 523(a)(6), any debt which arises from a "willful and malicious injury by the debtor to another entity or to the property of another entity" is not discharged. This requires the debtor to have committed an act similar to an intentional tort. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L.Ed.2d 90 (1998). The alleged injury must have been both willful and malicious. *In re Markowitz*, 190 F.3d at 463. Willfulness is present when the debtor "'desires to cause [the] consequences of his act, or ... believes that the consequences are substantially certain to result from it.'" *Id*. at 464 (citation omitted). "An act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse.'" *Phillips v. Weissert* (*In re Phillips)*, 434 B.R. 475, 483 (B.A.P. 6th Cir. 2010) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Malicious" acts do "'not require ill-will or specific intent to do harm.'" *Id.* "Conversion of property clearly falls within the misdeeds contemplated in 11 U.S.C. § 523(a)(6)—willful and malicious injury to persons or property." *Kasishke v. Frank* (*In re Frank*), 425 B.R. 435, 443 (Bankr. W.D. Mich. 2010). *See also Steier v. Best* (*In re Best*), 109 F. App'x. 1, 4 (6th Cir. June 30, 2004) ("Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises.").

In the present case, the District Court and the Court of Appeals cited the evidence in support of the jury's verdict that Zachary and Kimberly intended to deprive Sherry of her property. The evidence reflects that Zachary and Kimberly both knew that the property belonged to Sherry and they intentionally withheld it from her, refusing to return it in spite of her repeated requests. Being deprived of her property was an injury to Sherry and it was intentional. It was malicious in that Zachary and Kimberly had a clear duty to return the property to Sherry, consciously disregarded the duty and had no just cause for doing so. Thus, the elements of a willful and malicious injury are met.

The foregoing discussion illustrates that the first, second and third criteria for application of collateral estoppel are present: the issues before the Bankruptcy Court were identical to those resolved in the District Court proceeding, the issues were actually litigated before the District

Court, and the resolution of those issues were necessary to the judgment on the merits by the jury in the District Court. The Bankruptcy Court did not err in its determination that the debt owed to Sherry by Zachary and Kimberly is non-dischargeable pursuant to § 523(a)(6).

D. Other Arguments on Appeal

In the civil case, the jury returned a verdict that Zachary and Kimberly did not defraud Sherry. On appeal, Zachary and Kimberly argue that the finding of "no fraud" negates collateral estoppel and "should have been conclusive as to the 'intent to cause injury' requirement of Non-Dischargeability under § 523(a)(6)." (Appellants' Br. at 5.) This argument ignores the differences between § 523(a)(2) and § 523(a)(6). Fraud is not a required element of § 523(a)(6). While an action that is fraudulent often produces a willful and malicious injury pursuant to § 523(a)(6), not all types of willful and malicious injury stem from fraud.

In addition, the elements and burden of proof for a fraud claim under Michigan law are different than for a conversion claim.

> It is well established under Michigan law … that fraud can be established only by clear and convincing evidence that the defendant made a material representation that was false; that he knew was false or made recklessly without knowledge of its truth; that he made with the intent that it should be acted upon by the plaintiff; that the plaintiff acted in reliance thereon; and thereby suffered injury.

*Bitkowski v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 866 F.2d 821, 823 (6th Cir. 1987) (citing *Disner v. Westinghouse Elec. Corp.*, 726 F.2d 1106, 1111-12 n.11 (6th Cir. 1984); *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W. 2d 813, 816 (Mich. 1976)). Conversely, to establish the tort of conversion based upon the definition set forth in *Foremost Ins. Co. v. Allstate Ins. Co.*, *supra*, the plaintiff must carry the burden of proof by only a preponderance of the evidence. *In re Stewart*, 499 B.R. 557, 566 (Bankr. E.D. Mich. 2013). While the jury in the present case determined that Sherry did not establish that Zachary and Kimberly committed fraud by clear and convincing evidence, it did determine that a preponderance of the evidence established that Zachary and Kimberly committed conversion. The jury's finding regarding fraud, based on a different set of elements and a different burden of proof, in no way undermines its conclusion regarding conversion.

Zachary and Kimberly also argued that the Bankruptcy Court committed reversible error by refusing to consider Zachary's mental health as it related to intent. The doctrine of collateral estoppel precludes re-litigation of this issue. A jury reached a verdict that Zachary and Kimberly committed the intentional tort of conversion. The intent element required to hold the debt non-dischargeable under § 523(a)(6) is the same one already litigated in the District Court action with respect to the conversion claim and cannot now be challenged based on evidence previously rejected or not provided in that action.

Finally, Zachary and Kimberly argue that the amount of damages awarded by the jury for the conversion ($108,797.06) was the amount of tax obligations that Sherry owed the IRS and did not actually arise from the conversion of the videotapes and memorabilia. Again, this argument fails owing to the doctrine of collateral estoppel. The jury determined the amount of damages arising from the conversion. The District Court found sufficient evidence to support the jury verdict, and the Court of Appeals affirmed the District Court's decision not to grant Zachary and Kimberly's post-trial motion for judgment as a matter of law on this count. The Appellants are estopped from now arguing that the amount awarded is incorrect. Moreover, the Court of Appeals already explained how "it was appropriate for the jury to set the value of the property when it was converted by the amount of the debts that Zachary agreed to pay in exchange for it." *Trost*, 525 F. App'x at 343. The Bankruptcy Court was correct not to revisit this issue.

## CONCLUSION

For the reasons stated, the Bankruptcy Court's order granting summary judgment to Plaintiff Sherry Trost is AFFIRMED.