RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

IN RE: DEAN MAYNARD BOLAND,

*Debtor.*

_____

JANE DOE; JANE ROE,

*Plaintiffs-Appellees/Cross-Appellants,*

*v.*

DEAN MAYNARD BOLAND,

*Defendant-Appellant/Cross-Appellee.*

Nos. 19-3205/3211

Appeal from the Bankruptcy Appellate Panel of the Sixth Circuit;
No. 17-8019—Beth A. Buchanan, Scott W. Dales, and Guy R. Humphrey,
Bankruptcy Appellate Panel Judges.

United States Bankruptcy Court for the Northern District of Ohio at Cleveland;
Nos. 1:16-ap-01058; 1:16-bk-10250—Jessica E. Price Smith, Judge.

Argued:  December 11, 2019

Decided and Filed:  January 3, 2020

Before:  McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Stephen D. Hobt, Cleveland, Ohio, for Appellant/Cross-Appellee.  Jonathan E. Rosenbaum, Elyria, Ohio, for Appellees/Cross-Appellants.  **ON BRIEF:**  Stephen D. Hobt, Cleveland, Ohio, for Appellant/Cross-Appellee.  Jonathan E. Rosenbaum, Elyria, Ohio, for Appellees/Cross-Appellants.

---

**OPINION**

---

McKEAGUE, Circuit Judge.  This is the final chapter in the story of Dean Boland, the lawyer and expert witness who unfortunately chose to create child pornography in defense of his clients charged with possessing child pornography.  Two of the children victimized by Boland won a $300,000 civil judgment against him, which he tried to wipe away ("discharge") in bankruptcy.  A judgment can be discharged in bankruptcy, provided the judgment wasn't the result of the debtor knowingly injuring someone.  The bankruptcy court here discharged the civil judgment, but only because it bought Boland's implausible pleas of ignorance.  That was clear error, so we **REVERSE**.

**I**

The story begins in 2004, when Boland was serving as a technology expert for Oklahoma and Ohio defendants charged with possessing child pornography.  Boland provided his clients a simple defense: doubt.  Here's how it went.  Boland created "before-and-after" exhibits.  The "before" exhibits were innocuous stock photographs Boland found online of two young girls, Jane Doe and Jane Roe.  Boland manipulated ("morphed") these photographs on his computer to create the "after" exhibits: images of Doe and Roe engaged in sex acts.  If Boland could whip up doctored pornography this easily, the argument went, then it's possible the pornography his clients downloaded was doctored, too.  In essence, the defense was that there's just no way of knowing whether real children are depicted in pornography found on the internet.

Boland tried out his exhibits in an Oklahoma federal court.  After he testified, to his surprise, the prosecution turned toward him.  The "after" exhibits, prosecutors claimed, were actionable child pornography.  The judge interrupted that the exhibits were prepared "at court order" but told Boland to delete the images anyway.  Boland didn't comply.  Instead, he called federal prosecutors in his hometown, Cleveland, to see if they agreed his exhibits were illegal.  The prosecutors didn't call back.  So Boland shipped his computer from Oklahoma to his mother

in Ohio, fearing prosecution. Nevertheless, he also continued using the exhibits in testimony in Ohio courtrooms.

As it turns out, Boland's exhibits were in fact illegal. 18 U.S.C. § 2256(8)(C) defines as "child pornography" any image which is morphed to make it appear that a real minor is engaging in sexually explicit conduct. Ohio federal prosecutors caught up with Boland and offered him a pre-trial diversion agreement in lieu of prosecution, which Boland signed. In the agreement, Boland admitted he violated federal law (18 U.S.C. § 2252A(a)(5)(B), specifically) in morphing the images of Doe and Roe into child pornography.

Federal prosecutors identified Doe and Roe as part of their investigation and told Doe and Roe's parents what Boland had done. The parents promptly sued Boland under the civil-remedy provision of the federal child pornography statute, 18 U.S.C. § 2255, which provides minimum damages of $150,000 to victims of child pornographers. Seeing as Boland admitted he violated the law, Doe and Roe won a combined $300,000 judgment. We rejected all of Boland's challenges to criminal and civil liability. *Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012) ("*Boland II*"); *Boland v. Holder*, 682 F.3d 531 (6th Cir. 2012); *Doe v. Boland*, 630 F.3d 491 (6th Cir. 2011) ("*Boland I*").

**II**

Boland then filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Northern District of Ohio. Chapter 7 allows the "honest but unfortunate debtor" to discharge his debts in exchange for liquidating most of his assets. *Marrama v. Citizen's Bank of Mass.*, 549 U.S. 365, 367 (2007) (quotation omitted); *see also In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989). But not all debts are discharged, because not all debtors are honest but unfortunate. Any debt resulting from "willful and malicious injury by the debtor" is excepted from discharge. 11 U.S.C. § 523(a)(6). The creditor has the burden, however, of showing a judgment is not dischargeable. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

Doe and Roe accordingly sued Boland in bankruptcy court to prevent their judgment's discharge. Before getting to the evidence that Doe and Roe put before the bankruptcy court,

though, we first explain what it means to willfully and maliciously injure someone in this unique context.

**A**

The easy part is explaining what "willful and malicious injury" means.  A debtor willfully and maliciously injures a creditor if, acting without just cause or excuse, he knows or is substantially certain that his actions will cause injury.  *In re Trost*, 735 F. App'x 875, 878 (6th Cir. 2018); *accord Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 323–24 (7th Cir. 2012) (collecting cases).  *See also Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (explaining that 11 U.S.C. § 523(a)(6) contemplates "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury").

The more complicated part is explaining what all that means in the context of a judgment under 18 U.S.C. § 2255 like Doe and Roe's.  As *Geiger* emphasizes, a debtor might act intentionally but simply not know that the act will cause injury.  523 U.S. at 61–62.  That is typically the case with judgments involving negligence.  In such cases, the creditor will need to show that the debtor knew injury would result from his actions to except the judgment from discharge.  *See id.*; *In re Markowitz*, 190 F.3d 455, 464–66 (6th Cir. 1999) (remanding for the bankruptcy court to determine whether the debtor knew his legal malpractice would cause injury).

But the law will sometimes presume that injury results from an act.  Such is the case for false statements imputing a lack of chastity, which are defamatory per se.  *See In re Kennedy*, 249 F.3d 576, 582–83 (6th Cir. 2001) (applying Michigan law).  The law presumes that those statements will injure.  *Id.*  Thus, all a creditor needs to prove to except a defamation per se judgment from discharge is that the debtor knew the facts which made his statements actionable: that they were false and published without privilege to a third party.  *See id.*; *cf. Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (the debtor must "know[] the published statements were false" because "[m]ere reckless disregard for the truth or falsity of the statement, which can support a libel verdict, is not a willful and malicious injury" under § 523(a)(6)).  The judgment precludes the debtor from arguing that he thought his words weren't harmful.  *See Kennedy*,

249 F.3d at 582–83. Any debtor who makes a knowingly false, defamatory per se statement is at least substantially certain that his statement will injure. *Id.* at 583.

Doe and Roe's § 2255 judgment falls into this category. The law deems victims of child pornography "to have sustained damages of no less than $150,000 in value." 18 U.S.C. § 2255(a) (2006) (amended 2018). That's a legal presumption of injury. And just as with defamation per se, the injury Doe and Roe suffered materialized the moment Boland created his doctored exhibits and published them in court. *Boland II*, 698 F.3d at 882, 884. So to convince the bankruptcy court that their judgment was the result of willful and malicious injury, Doe and Roe had to prove only that Boland knew he was dealing with child pornography, either when creating his exhibits or using them in court—in particular, that he knew the images of Doe and Roe depicted real minors. *See* 18 U.S.C. § 2256(8)(C) and (9). The law does the rest. *Cf. Kennedy,* 249 F.3d at 582–83.

**B**

Back to the bankruptcy court. Doe and Roe introduced plenty of evidence showing Boland knew Doe and Roe were real minors, at least by the time Boland used his exhibits in Ohio courtrooms. There was the pre-trial diversion agreement that Boland signed. He stipulated in that agreement that he "knew or should have known" the stock photographs of Doe and Roe "depicted real, identifiable minors" at the time he downloaded them, and that "[t]here was nothing about these images to suggest that they were not real identifiable children . . . ." There were also admissions Boland made through discovery in Doe and Roe's civil case. Each photograph at the time of downloading, Boland admitted, "appeared to depict an actual minor." And then there was the circumstantial evidence. The Oklahoma prosecutors and judge warned Boland his exhibits were illegal. Boland was worried about being prosecuted for his exhibits, so he called Ohio federal prosecutors for advice and shipped his computer out of Oklahoma to his mother. Why would Boland, a lawyer and expert in image manipulation, be so concerned unless he knew the images he morphed depicted real minors? Not two years earlier, the Supreme Court struck down definitions of child pornography which covered images *not* depicting real children as unconstitutional. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 242, 256–58 (2002).

Boland countered that he never used his exhibits after testifying in Oklahoma—they were "previously admitted as sealed court records" in Ohio courts, and he had no control over their display during his expert testimony. Nor did Boland know the images of Doe and Roe depicted real minors. They appeared to be real, but his "impression was not that the image was of an actual minor." In Boland's words, "[b]ecause there's no way to visually evaluate an image to determine if it's 51 percent likely that it's an actual minor or 49 percent," there was "no way to determine the risk" that the photos he downloaded depicted actual minors. Or as rephrased by Doe and Roe's counsel (and agreed to by Boland), "because you don't know if the child was 51 percent, 61 percent or 39 percent an actual minor, . . . there's no risk that the child was an actual minor . . . [e]ven though they appeared to be an actual minor[.]"

The bankruptcy court bought these explanations. It found that Boland didn't actually "use" his exhibits in Ohio courts after testifying in Oklahoma because Boland had no control over their display. It also found Boland "did not know the minors in question or if they were even real persons." The bankruptcy court therefore discharged Doe and Roe's judgment.

The Bankruptcy Appellate Panel reversed and both sides appealed.[1] We review the bankruptcy court's decision directly. *In re Curry*, 509 F.3d 735, 735 (6th Cir. 2007). Doe and Roe argue the bankruptcy court clearly erred in finding that Boland was unaware his actions would injure them. Boland responds that Doe and Roe failed to meet their evidentiary burden, so the bankruptcy court committed no error.

## C

We review the bankruptcy court's factual findings for clear error. *In re United Producers, Inc.*, 526 F.3d 942, 946 (6th Cir. 2008). "A factual finding is clearly erroneous when, though there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mack*, 159 F.3d 208, 215 (6th Cir. 1998) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). This is a tough standard to meet by design. The bankruptcy judge, as the trier

---

[1]For clarity, Doe and Roe's cross-appeal was unnecessary because they won before the Bankruptcy Appellate Panel. *See Berry v. Schmitt*, 688 F.3d 290, 296 n.1 (6th Cir. 2012).

of fact, is best positioned to determine what the facts are.  *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75 (1985).  But where the trier of fact credits a story that is obviously contradicted by "objective evidence," or is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it[,]" we may find clear error.  *Id.* at 575.

This is the rare case of clear error.  Two factual findings supported the bankruptcy court's holding that Boland did not willfully and maliciously injure Doe and Roe: (1) that Boland didn't "use" his exhibits in court after his testimony in Oklahoma, and (2) that Boland didn't know if the images of Doe and Roe depicted real minors.  Both of those factual findings are clearly erroneous.

As for the first finding, we previously noted that after testifying in Oklahoma, "Boland did not remove the images from his hard drive, and later used the doctored images of the minor plaintiffs in two more state court proceedings while acting as an expert witness or counsel." *Boland I*, 630 F.3d at 494.  Boland admitted this in his pre-trial diversion agreement.  He "used these visual depictions [of Doe and Roe] in his capacity as an attorney and/or witness" in Ohio courts all the way through January 2005, long after his testimony in Oklahoma in April 2004. The bankruptcy court clearly erred in failing to credit this unassailable "objective evidence" over Boland's inconsistent testimony.  *See Anderson*, 470 U.S. at 575.

And as for the second finding, Boland's explanation for not knowing that Doe and Roe's images depicted real minors was that "there's no way to visually evaluate an image to determine if it's 51 percent likely that it's an actual minor or 49 percent . . . . [B]ecause you don't know if the child was 51 percent, 61 percent or 39 percent an actual minor, . . . there's no risk that the child was an actual minor . . . [e]ven though they appeared to be an actual minor[.]"  This is the kind of explanation that is so "implausible on its face that a reasonable factfinder would not credit it."  *Anderson*, 470 U.S. at 575.  Boland didn't couch this testimony in scientific or technical terms, and he never testified that there was some other reason why he apparently thought the images of Doe and Roe didn't depict real minors.  It's pure metaphysics—how does anyone know anything *for sure*?  Unfortunately for Boland, federal courts don't dabble in metaphysics. *Cf. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining "a party must do more than simply show that there is some metaphysical

doubt as to the material facts" to survive summary judgment).  The bankruptcy court clearly erred in crediting Boland's facially implausible explanation for his ignorance in the face of Doe and Roe's weighty evidence.

In fact, we question whether anything Boland said could have made a difference.  That is, a hearing might not have been necessary.  The facts before the bankruptcy court were largely undisputed, and where there were disputes, they were nominal: the insurmountable documentary evidence was on Doe and Roe's side.  That the bankruptcy court found otherwise, viewed Boland's testimony as "unrefuted," and claimed Doe and Roe failed to offer evidence demonstrating willful and malicious injury only highlights its error in this regard.  But the bankruptcy court made factual findings nonetheless, which we must review for clear error.  *See Anderson*, 470 U.S. at 571–72, 574 (the quality of the trial court's decision does not warrant a lesser standard of review; nor do findings of fact involving "physical or documentary evidence").

On that note, Boland knew he morphed images of real minors into child pornography by the time he testified in Ohio courts.  Of that we have a definite and firm conviction, based on both Doe and Roe's evidence and Boland's facially implausible excuses.  And because Boland knew his morphed pornography depicted real minors yet kept using it in court, he willfully and maliciously injured Doe and Roe.  *Cf. Kennedy*, 249 F.3d at 542–43.

**D**

Boland responds that we're missing the point: he had to subjectively intend to harm Doe and Roe in order to willfully and maliciously injure them.  In other words, either when creating the exhibits or displaying them in court, it must have been Boland's conscious desire to hurt Doe and Roe.  In support of this position, Boland cites to our statement in *Boland II* that "[w]hen he created morphed images, he intended to help criminal defendants, not harm innocent children." 698 F.3d at 885.  So, Boland asks, how could he have willfully and maliciously injured children he never intended to harm?

The answer is substantial certainty.  Section 523(a)(6) only requires the debtor to be substantially certain that an injury will result from his conduct.  *Markowitz*, 190 F.3d at 464. This is a concept we imported from tort law.  *Id.* (citing Restatement (Second) of Torts § 8A, at

15 (1964)). In tort law, intent is not "limited to consequences which are desired." Restatement (Second) of Torts § 8A cmt. b. It includes consequences which an actor knows are "certain, or substantially certain," to result from a particular act. *Id.* For example, although a bank robber might subjectively intend to enrich himself, he is undoubtedly substantially certain that his bank-robbing will injure someone—the bank, accountholders, and so on. *In re Trantham*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004).

The same principle applies here. In knowingly morphing images of real minors into child pornography and displaying them in court, Boland must have been substantially certain that he would injure those minors—even if the morphing was for educational purposes. The law presumes that such acts, which harm children's "reputation," "emotional well-being," and privacy, cause injury. *Boland II*, 698 F.3d at 880–81 (quotation omitted); *see* 18 U.S.C. § 2255(a). The act itself is the injury. As we explained before, this presumption precludes Boland from arguing he was not substantially certain injury would result from his knowing acts. *Cf. Kennedy*, 249 F.3d at 583 ("[C]ourts presume that the speakers" of knowingly false, defamatory per se statements "make such statements knowing that substantial harm or injury will result."). And even if Boland's knowledge of the law were required, he had it: besides being a lawyer and expert, his own website stated that victims can recover "$150,000 per incident" from child pornographers whether their victims know about the pornography or not. Thus, despite Boland's innocent intentions, he was substantially certain that his conduct would harm Doe and Roe. Under § 523(a)(6), that means Boland willfully and maliciously injured Doe and Roe, and their judgment must be excepted from discharge.

**III**

For these reasons, we **REVERSE** the decision of the bankruptcy court and **REMAND** with instructions to enter judgment in favor of Doe and Roe.